IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| YASHICA ROBINSON, M.D.; ALABAMA WOMEN'S CENTER; PLANNED PARENTHOOD SOUTHEAST, INC.; REPRODUCTIVE HEALTH SERVICES; and WEST ALABAMA WOMEN'S CENTER, on behalf of themselves, their staff, physicians, and their patients, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MARSHALL, in his official capacity as Alabama Attorney General, <br><br> Defendant. | CIVIL ACTION <br><br> Case No. 2:19-cv-365-MHT-SMD |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTIVE RELIEF[1]**

Defendant Marshall concedes that Plaintiffs are entitled to a preliminary injunction against enforcement of Alabama House Bill 314 ("the Act") as to pre-viability abortions. *See* Def.'s Opp'n at 6 (conceding that controlling precedent "requires that [a preliminary injunction] be granted with respect to the operation of the Act pre-viability"); *see also id.* at 3 (conceding "the Act is inconsistent with *Casey*" and "Plaintiffs are likely to prevail before this Court and should be granted a preliminary injunction"); *id.* at 5 ("Because the Supreme Court's abortion precedents are binding on this Court, Plaintiffs' challenge to the Act as applied to abortions

---

[1] This brief refers to Defendant's Response to Plaintiffs' Motion for Preliminary Injunction (doc. 64) as "Def.'s Opp'n" and to Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunctive Relief (doc. 51) as "Pls.' Mem." Unless otherwise indicated, all emphases are added and all internal citations and quotations omitted.

1

[prior to viability] is likely to succeed in this Court."); *id.* ("[U]ntil [the Supreme Court's] decisions are overruled, Plaintiffs are likely to prevail on their challenge to the Act as applied to [pre-viability] abortions"); *id.* at 12 ("[T]his Court is bound by *Roe* and *Casey*, and these cases require that Plaintiffs' motion for a preliminary injunction be granted"). Indeed, given that Defendant raises no argument that would enable this Court to uphold the Act, nor indicates that any such argument is (or could be) forthcoming unless the Supreme Court overturns nearly five decades of precedent, Defendant effectively concedes that Plaintiffs are entitled to permanent injunctive relief, as well. *Cf. United States v. Prater*, No. 8:02-CV-2052-T-23MSS, 2005 WL 2715401, at *5 (M.D. Fla. Sept. 23, 2005) ("[W]here there is no triable issue of fact, the court may convert a preliminary injunction to a permanent injunction without an evidentiary hearing.") (citing cases).[2]

Defendant Marshall is correct that Plaintiffs do not perform post-viability abortions, and that Alabama law already prohibits abortion after 20 weeks of pregnancy. Def.'s Opp'n at 4. As such, a preliminary injunction as to pre-viability abortions is appropriate to preserve the status quo and prevent irreparable harm. However, Plaintiffs do not concede that, as a matter of final declaratory and/or injunctive relief, this Court can sever the Act's application to post-viability

---

[2] While Defendant only explicitly addresses two of the four preliminary injunction factors, *see* Def.'s Opp'n at 4–6 (discussing likelihood of success on the merits and balance of the harms or equities), because Defendant has conceded the existence of a constitutional violation, he has conceded, at minimum, the existence of *per se* irreparable harm and that the public interest weighs in favor of the injunction. *See* Pls.' Mem. at 12, 15–16; *see also Allen v. Bartholomew Cty. Court Servs. Dep't*, 185 F. Supp. 3d 1075, 1086 (S.D. Ind. 2016) (finding that where defendants failed to address any of the preliminary injunction factors besides the plaintiff's likelihood of success on the merits, defendants had "conced[ed] those points"); *Sweet People Apparel, Inc. v. Fame of NY, Inc.*, No. 11-1666 SRC, 2011 WL 2937360, at *4–5 (D.N.J. July 19, 2011) (finding movants to have prevailed on showing that the balance of hardships weighed in their favor and that the public interest would be served by injunctive relief where defendants "fail[ed] to address" these factors).

abortions. *See, e.g.*, *R.I. Med. Soc'y v. Whitehouse*, 239 F.3d 104, 106 (1st Cir. 2001) (refusing to sever post-viability application of law where statute "draws no line between viability and nonviability" and a post-viability abortion ban "still stands on the books"); *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 202 (6th Cir. 1997) (holding "[p]ost-viability application of the ban cannot be separated from pre-viability application of the ban so that it may stand alone. There is no clause or word dealing with post-viability application of the ban. We would essentially have to rewrite the Act in order to create a provision which could stand by itself.").

\*     \*     \*

Though none of the arguments Defendant raises in his brief preclude entry of a preliminary injunction, two points merit an additional response:

**First**, Defendant Marshall asserts that the Supreme Court has "hardly been consistent" in its abortion precedent. *See* Def.'s Opp'n at 9. This claim is not only legally irrelevant, but is belied by the very cases Defendant describes. Since *Roe v. Wade* was first decided over forty-five years ago, the Supreme Court has repeatedly and consistently reaffirmed that "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992); *see also* Pls.' Mem. at 8–12. The Court's adoption of the undue burden test as the standard of review for abortion restrictions in *Casey* did not, as Defendant suggests, reflect a "jettison[ing] [of] much of *Roe*'s reasoning." Def.'s Opp'n at 2, 11. To the contrary, the Supreme Court emphasized in *Casey* that its "adoption of the undue burden analysis *does not* disturb the central holding of *Roe v. Wade*," 505 U.S. at 879, while repeatedly reaffirming *Roe*'s holding that "the Constitution protects a woman's right to terminate her pregnancy," *id.* at 844, and that "viability marks the earliest point at which the State's interest in fetal life is constitutionally adequate to justify a legislative ban on

3

nontherapeutic abortions." *Id.* at 860; *see also id.* at 871 ("The woman's right to terminate her pregnancy before viability is the most central principle of *Roe v. Wade*. It is a rule of law and a component of liberty we cannot renounce").[3]

Moreover, rejecting any notion that the abortion right reflected "obsolete constitutional thinking," the *Casey* Court elaborated on its doctrinal basis. *Roe*, it explained, "stands at an intersection of two lines of decisions." *Casey*, 505 U.S. at 857. First, the abortion right is "an exemplar" of the "recognized protection accorded to the liberty relating to intimate relationships, the family, and decisions about whether or not to beget or bear a child," cases most prominently exemplified by *Griswold v. Connecticut*, 381 U.S. 479 (1965).[4] *Casey*, 505 U.S. at 857. Second, the abortion right reflects a rule "of personal autonomy and bodily integrity, with doctrinal affinity to cases recognizing limits on governmental power to mandate medical treatment or to

---

[3] Defendant also suggests that, just one year after deciding *Casey*, the Supreme Court decided the undue burden standard was "problematic" and "adjusted the test" by adopting the large fraction test. Def.'s Opp'n at 10. This is, of course, completely incorrect, as the large fraction test was set forth in *Casey* itself. 505 U.S. at 895.

[4] In *Griswold*, the Court held unconstitutional a Connecticut law prohibiting the use of contraceptives because it violated the "right to privacy" of married couples. Later cases have made clear, however, that the right announced in *Griswold* is not limited to either married couples, *see Eisenstadt v. Baird*, 405 U.S. 438 (1972) (holding that the right to privacy protects single persons no less than married persons), or to contraception alone, *see, e.g., Roe*, 410 U.S. at 152–53 (relying on *Griswold* to hold that women have a constitutional right to abortion); *Moore v. City of E. Cleveland*, 431 U.S. 494, 506 (1977) (relying on *Griswold* to invalidate a zoning law that allowed only certain family members to live together in a dwelling); *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (relying on *Griswold* to hold that same-sex couples have a constitutional right to engage in intimate "conduct without intervention of the government"). Indeed, the Court in *Lawrence* repeatedly recognized *Casey's* critical role in "reaffirm[ing] the substantive force of the liberty protected by the Due Process Clause." *Lawrence*, 539 U.S. at 573. According to the Court, it was *Casey* that once "again confirmed that our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Id.* at 573–74.

4

bar its rejection." *Id.* (citing *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990)).

And far from "fashion[ing] another new interpretation" of its test in *Whole Woman's Health v. Hellerstedt*, *see* Def.'s Opp'n at 10, the Supreme Court affirmed *Casey* in the face of the Fifth Circuit's misapplication of that precedent. *See Whole Woman's Health*, 136 S. Ct. at 2309 ("The Court of Appeals' articulation of the relevant standard is incorrect . . . . The rule announced in *Casey*, . . . requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer" (citing *Casey*, 505 U.S. at 887–898, 899–901)); *id.* at 2310 (holding that the Fifth Circuit was incorrect to "equate the judicial review applicable to the regulation of [abortion] with the less strict review applicable" to economic legislation, and noting that such an "approach simply does not match the standard that this Court laid out in *Casey*, which asks courts to consider whether any burden imposed on abortion access is 'undue.'"); *id.* ("The statement that legislatures, and not courts, must resolve questions of medical uncertainty is also inconsistent with this Court's case law. Instead, the Court, when determining the constitutionality of laws regulating abortion procedures, has placed considerable weight upon evidence and argument presented in judicial proceedings." (citing *Casey*, 505 U.S. at 888–894)).[5]

---

[5] Defendant's claim that the Supreme Court has previously given "short shrift" to the State's interest in "protecting fetal . . . life," Def.'s Opp'n at 11, is likewise unsupported by the precedent he cites. While the Court has never held that this interest is sufficient to justify forced pregnancy and childbearing, the Court has recognized "that the State has legitimate interests from the outset of the pregnancy in protecting . . . the life of the fetus that may become a child." *Casey,* 505 U.S. at 846. The Court has also held that "[r]egulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose" and that "[u]nless it has that effect on her right of

5

In sum, and contrary to what Defendant has argued, Supreme Court precedent has consistently recognized a sphere of decisional autonomy that places certain personal decisions about family, childbearing, and intimate relationships—including the decision to have an abortion—beyond the reach of the State. To suggest otherwise is to disregard and misrepresent nearly half a century of constitutional law.

**Second**, as this Court has recognized, and Defendant does not dispute (*see* Def.'s Opp'n at 12), Plaintiffs have third-party standing to raise the constitutional rights of their patients. *See Planned Parenthood Se., Inc. v. Strange*, 9 F. Supp. 3d 1272, 1279 (M.D. Ala. 2014). However, Defendant Marshall asserts that this is the result of "uniquely relaxed standing rules in the area of abortion" that are "[u]nlike any other area of the law." Def.'s Opp'n at 12. This, too, misstates well-settled precedent. For almost one hundred years, the Supreme Court has permitted litigants to assert the rights of third parties in a number of contexts that have nothing to do with abortion. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688–89 (2017) (non-citizen son has third party standing to assert equal protection rights of citizen father); *Powers v. Ohio*, 499 U.S. 400, 410–15 (1991) (defendant in a criminal case has third-party standing to assert equal protection claims of jurors excluded by the prosecution because of their race); *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (attorney has third-party standing to assert existing clients' due process rights); *Hodel v. Irving*, 481 U.S. 704, 711–712, 723 & n. 7 (1987) (children and their guardians have third-party standing to assert Fifth Amendment rights of deceased relatives); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954–58 (1984) (professional fundraiser has third-party standing to challenge statute limiting commission

---

choice, a state measure designed to persuade her to choose childbirth over abortion will be upheld if reasonably related to that goal." *Id.* at 877–78.

6

as violation of clients' First Amendment right to hire him for a higher fee); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 683 (1977) (corporate distributor of contraceptives has third-party standing to bring substantive due process challenge to state law limiting sale of its products on behalf of potential customers); *Craig v. Boren*, 429 U.S. 190, 195 (1976) (beer vendor has third-party standing to assert equal protection rights of customers to be free from sex discrimination); *Barrows v. Jackson*, 346 U.S. 249, 254–57 (1953) (white property owners whose land was burdened by racial covenants have third-party standing to assert constitutional rights of prospective black purchasers); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 535–36 (1925) (owners of private schools have third-party standing to assert due process liberty interests of students and their parents). Indeed, rather than turn on the specific right at issue, these cases share three common elements: (1) the litigant will suffer some concrete injury from the operation of the challenged statute or action; (2) the litigant and the third party whose rights she is asserting have a close relationship; and (3) the third party faces an obstacle or hindrance in asserting her own rights. *See Singleton v. Wulff*, 428 U.S. 106, 114–16 (1976).[6] Thus, it cannot seriously be said that third-party standing is the result of "special rules" for abortion, Def.'s Opp'n at 13, as opposed to a longstanding principle of Article III jurisprudence.

---

[6] Here, Defendant only really takes issue with the second prong, claiming that the close relationship between abortion providers and patients is "unproven at best." Def.'s Opp'n at 13. However, with good reason, no court has ever credited this claim. *See Singleton*, 428 U.S. at 117 ("A woman cannot safely secure an abortion without the aid of a physician . . . . Moreover, the constitutionally protected abortion decision is one in which the physician is intimately involved. Aside from the woman herself . . . the physician is uniquely qualified to litigate the constitutionality of the State's interference with . . . that decision.").

7

**CONCLUSION**

For the foregoing reasons, alongside those presented in Plaintiffs' opening brief, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

Dated: August 19, 2019

                                                        Respectfully submitted,

                                                        /s/ Alexa Kolbi-Molinas
Alexa Kolbi-Molinas*
New York State Bar #4477519
Meagan Burrows*
New York State Bar #5341904
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
akolbi-molinas@aclu.org
mburrows@aclu.org
(212) 549-2633

*Attorneys for Plaintiffs Yashica Robinson, M.D., Alabama Women's Center, Reproductive Health Services, and West Alabama Women's Center*

Carrie Y. Flaxman*
District of Columbia Bar #458681
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, D.C. 20005
carrie.flaxman@ppfa.org
(202) 973-4830

Susan Lambiase*
New York State Bar #2099489
Planned Parenthood Federation of America
123 William St.
New York, NY 10038
susan.lambiase@ppfa.org
(212) 261-4750

*Attorneys for Plaintiff Planned Parenthood Southeast, Inc.*

        Randall C. Marshall
        ASB-3023-A56M
        Brock Boone
        ASB-2864-L11E
        P.O. Box 6179
        Montgomery, AL 36106-0179
        (334) 265-1747
        (334) 265-2754
        bboone@aclualabama.org
        rmarshall@aclualabama.org

*Attorneys for Plaintiffs*

*\*Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of August 2019, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Middle District of Alabama using the CM/ECF system, thereby serving all counsel of record.

                                          /s/Alexa Kolbi-Molinas
                                          Alexa Kolbi-Molinas

                                          *Attorney for Plaintiffs Yashica Robinson, M.D., Alabama Women's Center, Reproductive Health Services, and West Alabama Women's Center*