```
        IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

           MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


YASHICA ROBINSON, M.D.,    )
et al., on behalf of       )
themselves, their          )
patients, physicians,      )
clinic administrators,     )
and staff,                 )
                           )
     Plaintiffs,           )
                           )    CIVIL ACTION NO.
     v.                    )      2:19cv365-MHT
                           )          (WO)
STEVEN MARSHALL, in his    )
official capacity as       )
Alabama Attorney General,  )
                           )
     Defendant.            )
```

## OPINION

This lawsuit challenges a 2019 Alabama statute, Ala. Act No. 2019-189, that imposes criminal liability on abortion providers for nearly all abortions, completed or attempted, regardless of fetal viability.[1] In essence, the Act imposes a near-total ban on abortion. It is set to take effect on November 15,

---

1. Because the current codification of Ala. Act No. 2019-189 at 1975 Ala. Code § 26-23H is subject to the editorial action of the Code Commissioner, the codification is tentative.

2019.

The plaintiffs are providers of abortion services: Dr. Yashica Robinson, M.D.; Alabama Women's Center; Planned Parenthood Southeast, Inc.; Reproductive Health Services; and West Alabama Women's Center.  They sue on behalf of their patients, claiming that the Act is unconstitutional under the Due Process Clause of the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983, because it violates their patients' substantive-due-process rights to liberty and privacy. They also sue on behalf of themselves.  The defendant is the State Attorney General, sued in his official capacity.  This court's jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) & (4) (civil rights).

The case is now before the court on the plaintiffs' motion for a preliminary injunction (doc. no. 50).  For the reasons detailed below, the motion will be granted with respect to any and all applications of the Act to

pre-viability abortion.

## I.   LEGAL STANDARDS

To show that a preliminary injunction is appropriate, the plaintiffs must demonstrate that (1) there is a substantial likelihood that they ultimately will prevail on the merits of the claim; (2) they will suffer irreparable injury unless the injunction issues; (3) the threatened injury to them outweighs whatever damage the proposed injunction may cause the defendant; and (4) the public interest will not be harmed if the injunction should issue.  *See Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983).  The plaintiffs bear the burden to make each showing.  *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

Here, in order to demonstrate a substantial likelihood of success on the merits, the plaintiffs must show that the Act is likely to violate the substantive-due-process rights of individuals seeking

3

abortions in Alabama. The Fourteenth Amendment to the United States Constitution protects a woman's right to terminate her pregnancy. "The woman's right to terminate her pregnancy before viability," the Supreme Court has stated, is "a rule of law and a component of liberty we cannot renounce." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 871 (1992) (plurality opinion). The Supreme Court "has determined and then redetermined that the Constitution offers basic protection to the woman's right to choose." *Stenberg v. Carhart*, 530 U.S. 914, 921 (2000).

This right, however, has limits. As the Court recognized in *Casey*, the State has legitimate interests in protecting maternal health and the potential life of the fetus. A State may regulate abortion to further those interests, but only if the laws in question do not pose an "undue burden" to a woman's right to end her pregnancy. *Casey*, 505 U.S. at 876-79 (plurality opinion). "An undue burden exists, and therefore a

4

provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Id.* at 879. In evaluating regulations of pre-viability abortion, then, courts must "consider[] the burdens a law imposes on abortion access together with the benefits those laws confer." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016).

But unlike laws that *regulate* the performance of pre-viability abortion, *bans* on pre-viability abortion require no balancing at all. The United States Constitution forbids the prohibition of abortion prior to fetal viability. "Before viability, the State's interests are not strong enough to support a prohibition of abortion...." *Casey*, 505 U.S. at 846 (opinion of the Court); *see Gonzales v. Carhart*, 550 U.S. 124, 146 (2007). This bright-line rule governs bans, rather than mere regulations, of pre-viability abortion.

## II. DISCUSSION

### A. Substantial Likelihood of Success on the Merits

#### 1. Justiciability

As a threshold matter, the plaintiffs' success on the merits requires a justiciable case. Here, clear case law supports the plaintiffs' standing to bring suit--a fact that the defendant has acknowledged. *See* Def.'s Opp'n (doc. no. 64) at 12 (citing precedent that "allows abortion clinics and abortion doctors to assert constitutional claims" on behalf of their patients).

The plaintiffs sue in part on behalf of their patients.[2] *See* Complaint (doc. no. 1) at 21. They argue that the Act threatens their patients' substantive-due-process rights, which are guaranteed under the Fourteenth Amendment to the United States

---

2. The plaintiffs also bring their claims on their own behalves. *See* Complaint (doc. no. 1) at 5-7. Because of clear precedent regarding third-party standing, however, the court reserves consideration of possible alternative grounds.

6

Constitution.

Federal courts, including the Supreme Court, routinely allow providers to challenge abortion laws on behalf of patients. *See, e.g.*, *Stenberg*, 530 U.S. at 922-23; *Casey*, 505 U.S. at 845 (opinion of the Court). *See generally Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 794 (7th Cir. 2013) ("[T]he cases are legion that allow an abortion provider, such as Planned Parenthood of Wisconsin or Milwaukee Women's Medical Services, to sue to enjoin as violations of federal law ... state laws that restrict abortion."); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917-18 (9th Cir. 2004) (collecting cases). These cases emphasize "the central role of the physician, both in consulting with the woman about whether or not to have an abortion, and in determining how any abortion was to be carried out." *Colautti v. Franklin*, 439 U.S. 379, 387 (1979). Such a relationship similarly supports standing for the plaintiffs at

bar--all are intimately involved in patients' decisions regarding abortion and reproductive health. *See generally Whole Woman's Health*, 136 S. Ct. at 2323 (Thomas, J., dissenting) ("[T]he Court has ... accepted doctors' and clinics' vicarious assertion of the constitutional rights" of patients).

In sum, under precedent that the Supreme Court has repeatedly reaffirmed, abortion providers may assert the substantive-due-process rights of their patients. The plaintiffs may do so here. The court thus turns to the constitutional arguments that they raise in favor of a preliminary injunction.


2. Substantive Due Process

The court is persuaded that the plaintiffs are likely to succeed in showing that the Act violates an individual's constitutional right to obtain a

pre-viability abortion,[3] and thus that it violates her constitutional rights. And the defendant agrees. *See* Def.'s Opp'n (doc. no. 64) at 3 (conceding that, as to pre-viability abortion, the "[p]laintiffs are likely to prevail before this Court and should be granted a preliminary injunction"); *id.* at 5 (stating that the plaintiffs are likely to prevail on their challenge to the Act as applied to pre-viability abortion).

The Act imposes criminal liability on any person who "intentionally perform[s] or attempt[s] to perform an abortion," with limited exceptions for serious health risks to the mother. Ala. Act No. 2019-189 § 4. It does so without regard to the viability of the fetus. *See id.*

This fact alone makes an injunction appropriate.

---

3. At this stage, although the plaintiffs are challenging the entire statute, the court considers only the Act's applications to pre-viability abortion. The plaintiffs acknowledge that "a preliminary injunction as to pre-viability abortions is appropriate to preserve the status quo and prevent irreparable harm." Plaintiff's Repl. Mem. (doc. no. 66) at 2.

As stated previously, banning abortion before viability violates Supreme Court precedent. *See Casey*, 505 U.S. at 879 (plurality opinion) ("[A] State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability."); *Whole Woman's Health*, 136 S. Ct. at 2320. No alleged state interest can overcome this clear mandate. *See Casey*, 505 U.S. at 878 (plurality opinion); *Isaacson v. Horne*, 716 F.3d 1213, 1229 (9th Cir. 2013) ("[B]ecause Arizona's twenty-week law acts as a prohibition of, and not merely a limitation on the manner and means of, pre-viability abortions, under long-established Supreme Court law no state interest is strong enough to support it.").

Thus, as a ban on pre-viability abortion, the Act contravenes established law. *Cf. Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015) (invalidating law that banned "abortions after 12 weeks' gestation"); *Horne*, 716 F.3d at 1229 (enjoining a ban on abortion at 20

weeks); *Preterm-Cleveland v. Yost*, No. 1:19-CV-00360, 2019 WL 2869640 (S.D. Ohio 2019) (Barrett, J.) (granting a preliminary injunction of enforcement of a ban on abortion care at and after six weeks of pregnancy); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 3:19-CV-178-DJH, 2019 WL 1233575, at *1 (W.D. Ky. 2019) (Hale, J.) (temporarily enjoining enforcement of a bill that "would effectively ban the vast majority of abortions in the Commonwealth of Kentucky"); *Jackson Women's Health Org. v. Currier*, 349 F. Supp. 3d 536, 544 (S.D. Miss. 2018) (Reeves, J.) (enjoining a ban on abortion beginning at 15 weeks). The plaintiffs have shown a substantial likelihood of success on the merits of their claim.

## B. Irreparable Harm

The plaintiffs' alleged injury is concrete and imminent. Enforcement of the ban would yield serious and irreparable harm, violating the right to privacy

11

and preventing women from obtaining abortions in Alabama.[4]

First, any ongoing violation of the constitutional right to privacy constitutes "irreparable injury." *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). "Invasions of privacy ... [can]not be compensated for by monetary damages." *Id.* (citations omitted). The nature of the violation thus counsels in favor of an injunction.

Even apart from this general principle, the enforcement of the Act would irreparably harm those who contemplate or seek, but cannot lawfully obtain, a pre-viability abortion. *See Roe v. Wade*, 410 U.S. 113, 153 (1973) ("The detriment that the State would impose

---

4. The plaintiffs argue, and the court agrees, that the defendant has conceded both "the existence of *per se* irreparable harm and that the public interest weighs in favor of the injunction" because neither was explicitly addressed in the defendant's response. See Plaintiff's Repl. Mem. (doc. no. 66) at 2 n.2. The court nonetheless discusses these factors.

upon the pregnant woman by denying this choice altogether is apparent."). A near-total ban imposes substantial costs on women, including those who are unable to obtain an abortion and those who "desperately seek to exercise their ability to decide whether to have a child" and thus "would take unsafe measures to end their pregnancies." *Planned Parenthood Se., Inc. v. Strange*, 33 F. Supp. 3d 1330, 1363 (M.D. Ala. 2014) (Thompson, J.).

Finally, the law's limited exceptions do not alter the court's conclusion. "[A] medical exception cannot save an otherwise unconstitutional ban." *W. Alabama Women's Ctr. v. Miller*, 299 F. Supp. 3d 1244, 1283 (M.D. Ala. 2017) (Thompson, J.), *aff'd sub nom. W. Alabama Women's Ctr. v. Williamson*, 900 F.3d 1310 (11th Cir. 2018), *cert. denied sub nom. Harris v. W. Alabama Women's Ctr.*, 139 S. Ct. 2606 (2019); *see also Casey*, 505 U.S. at 879 (plurality opinion) (noting that a State may not prohibit any woman from obtaining a

13

pre-viability abortion "[r]egardless of whether exceptions are made for particular circumstances"). This is especially so when the exceptions are narrow, arguably ambiguous, or validated post-hoc. *See Miller*, 299 F. Supp. 3d at 1283.

The court thus finds that, if not enjoined, the Act's near-total ban on abortion would impose a substantial and irreparable harm, leaving many patients without recourse. This factor, too, points toward a preliminary injunction.

### C. The Balance of Hardships

The balance of hardships tilts in favor of the plaintiffs.[5] Because the Act prohibits nearly all pre-viability abortions, the outcome is simple: no state interest can prevail in this context. *See Casey*, 505 U.S. at 860 (opinion of the Court) ("[V]iability

---

    5. Again, the defendant concedes as much. *See* Def.'s Opp'n (doc. no. 64) at 6 (noting that "the balance of the equities supports a preliminary injunction as applied to pre-viability abortions").

marks the earliest point at which the State's interest in fetal life is constitutionally adequate to justify a legislative ban on nontherapeutic abortions.").

Moreover, because the law will almost certainly be found unconstitutional, any cost to the State is slight: Alabama has "no legitimate interest in enforcing an unconstitutional [law]." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).  The balance of equities favors an injunction.

### D. The Public Interest

Fourth, and finally, a preliminary injunction furthers the public interest.  A preliminary injunction prohibiting enforcement of the Act will preserve the status quo, allowing the court to make a full ruling on the merits of the case without subjecting the plaintiffs, their patients, or the public to the ban's potential impact.  *See generally Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir.

2004) (noting that an injunction entered to preserve the status quo pending a final resolution is "perhaps the textbook definition of a preliminary injunction").

Further, "the public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 896 (6th Cir. 2012). In contrast, the public has no interest in enforcing an unconstitutional statute, *see KH Outdoor*, 458 F.3d at 1272, particularly when "the legislation seems designed, as here, as a protest against Supreme Court decisions." *Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Parson*, 389 F. Supp. 3d 631, 637 (W.D. Mo. 2019) (Sachs, J.). A preliminary injunction supports the public interest, and so the fourth factor counsels in favor of an injunction.

## III. CONCLUSION

Alabama's abortion ban contravenes clear Supreme

16

Court precedent. It violates the right of an individual to privacy, to make "choices central to personal dignity and autonomy." *Casey*, 505 U.S. at 851 (opinion of the Court). It diminishes "the capacity of women to act in society, and to make reproductive decisions." *Id.* at 860. It defies the United States Constitution.

The court will, therefore, enter an appropriate order preliminarily enjoining enforcement of the Act as applied to pre-viability abortion. Further, the court, in its discretion, will waive the bond requirement of Fed. R. Civ. P. 65(c). *See BellSouth Telecommunications v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

DONE, this the 29th day of October, 2019.

                                             /s/ Myron H. Thompson
                                       **UNITED STATES DISTRICT JUDGE**