# EXHIBIT A

1    HB314

2    198038-3

3    By Representatives Collins, Rowe, Mooney, Wilcox, Estes,

4    Lipscomb, Isbell, Ellis, Lee, Allen, Faust, Brown (K), Pettus,

5    Greer, Kiel, Nordgren, Reynolds, Drake, Wood (R), Ball, Fridy,

6    Rich, Ingram, Shiver, Wood (D), Simpson, Kitchens, Marques,

7    Weaver, South, Faulkner, Shaver, Holmes, McMillan, Whorton,

8    Farley, Hurst, Standridge, Crawford, Sorrell, Brown (C),

9    Robertson, Whitt, Moore (P), Wheeler, Carns, Oliver, Garrett,

10   Sullivan, Gaston, Blackshear, Fincher, Wingo, Hill, Ledbetter,

11   Baker, Dismukes, Stadthagen, Poole, Clouse, McCutcheon, Shedd,

12   Sorrells, Pringle, Harbison, Hanes and Easterbrook

13   RFD: Judiciary

14   First Read: 02-APR-19

HB314

1

2    ENROLLED, An Act,

3           Relating to abortion; to make abortion and attempted

4    abortion felony offenses except in cases where abortion is

5    necessary in order to prevent a serious health risk to the

6    unborn child's mother; to provide that a woman who receives an

7    abortion will not be held criminally culpable or civilly

8    liable for receiving the abortion; and in connection therewith

9    would have as its purpose or effect the requirement of a new

10   or increased expenditure of local funds within the meaning of

11   Amendment 621 of the Constitution of Alabama of 1901, now

12   appearing as Section 111.05 of the Official Recompilation of

13   the Constitution of Alabama of 1901, as amended.

14   BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

15          Section 1. This act shall be known as The Alabama

16   Human Life Protection Act.

17          Section 2. Legislative Findings.

18          (a) This state's statute criminalizing abortion,

19   Section 13A-13-7, Code of Alabama 1975, has never been

20   repealed. It has remained unenforceable as a result of the

21   U.S. Supreme Court decision in Roe v. Wade, 410 U.S. 113

22   (1973) and its progeny, which struck down as unconstitutional

23   a Texas statute criminalizing abortion and which effectively

24   repealed by implication and made unenforceable all other state

25   statutes criminalizing abortion.

HB314

1      (b) On November 6, 2018, electors in this state
2   approved by a majority vote a constitutional amendment to the
3   Constitution of Alabama of 1901 declaring and affirming the
4   public policy of the state to recognize and support the
5   sanctity of unborn life and the rights of unborn children. The
6   amendment made it clear that the Constitution of Alabama of
7   1901 does not include a right to an abortion or require the
8   funding of abortions using public funds.

9      (c) In present state law, Section 13A-6-1, Code of
10  Alabama 1975, defines a person for homicide purposes to
11  include an unborn child in utero at any stage of development,
12  regardless of viability.

13     (d) In the United States Declaration of
14  Independence, the principle of natural law that "all men are
15  created equal" was articulated. The self-evident truth found
16  in natural law, that all human beings are equal from creation,
17  was at least one of the bases for the anti-slavery movement,
18  the women's suffrage movement, the Nuremberg war crimes
19  trials, and the American civil rights movement. If those
20  movements had not been able to appeal to the truth of
21  universal human equality, they could not have been successful.

22     (e) Abortion advocates speak to women's rights, but
23  they ignore the unborn child, while medical science has
24  increasingly recognized the humanity of the unborn child.

HB314

1          (f) Recent medical advances prove a baby's heart
2     starts to beat at around six weeks. At about eight weeks, the
3     heartbeat can be heard through an ultrasound examination. A
4     fetal Doppler can detect a fetal heartbeat as early as 10
5     weeks.

6          (g) Ultrasound imaging shows the developing child in
7     utero.

8          (h) As early as six weeks after fertilization, fetal
9     photography shows the clear development of a human being. The
10    Alabama Department of Public Health publication "Did You Know
11    . . ." demonstrates through actual pictures at two-week
12    intervals throughout the entire pregnancy the clear images of
13    a developing human being.

14         (i) It is estimated that 6,000,000 Jewish people
15    were murdered in German concentration camps during World War
16    II; 3,000,000 people were executed by Joseph Stalin's regime
17    in Soviet gulags; 2,500,000 people were murdered during the
18    Chinese "Great Leap Forward" in 1958; 1,500,000 to 3,000,000
19    people were murdered by the Khmer Rouge in Cambodia during the
20    1970s; and approximately 1,000,000 people were murdered during
21    the Rwandan genocide in 1994. All of these are widely
22    acknowledged to have been crimes against humanity. By
23    comparison, more than 50 million babies have been aborted in
24    the United States since the Roe decision in 1973, more than
25    three times the number who were killed in German death camps,

HB314

1   Chinese purges, Stalin's gulags, Cambodian killing fields, and
2   the Rwandan genocide combined.

3          (j) The cases of Roe v. Wade and its progeny have
4   engendered much civil litigation and legislative attempts to
5   reign in so called abortion rights. Roe v. Wade attempted to
6   define when abortion of an unborn child would be legal. Judges
7   and legal scholars have disagreed and dissented with its
8   finding.

9          Section 3. As used in this act, the following terms
10  shall have the following meanings:

11         (1) ABORTION. The use or prescription of any
12  instrument, medicine, drug, or any other substance or device
13  with the intent to terminate the pregnancy of a woman known to
14  be pregnant with knowledge that the termination by those means
15  will with reasonable likelihood cause the death of the unborn
16  child. The term does not include these activities if done with
17  the intent to save the life or preserve the health of an
18  unborn child, remove a dead unborn child, to deliver the
19  unborn child prematurely to avoid a serious health risk to the
20  unborn child's mother, or to preserve the health of her unborn
21  child. The term does not include a procedure or act to
22  terminate the pregnancy of a woman with an ectopic pregnancy,
23  nor does it include the procedure or act to terminate the
24  pregnancy of a woman when the unborn child has a lethal
25  anomaly.

HB314

1          (2) ECTOPIC PREGNANCY. Any pregnancy resulting from
2     either a fertilized egg that has implanted or attached outside
3     the uterus or a fertilized egg implanted inside the cornu of
4     the uterus.
5          (3) LETHAL ANOMALY. A condition from which an unborn
6     child would die after birth or shortly thereafter or be
7     stillborn.
8          (4) MEDICAL EMERGENCY. A condition which, in
9     reasonable medical judgment, so complicates the medical
10    condition of the pregnant woman that her pregnancy must be
11    terminated to avoid a serious health risk as defined in this
12    act.
13         (5) PHYSICIAN. A person licensed to practice
14    medicine and surgery or osteopathic medicine and surgery in
15    Alabama.
16         (6) SERIOUS HEALTH RISK TO THE UNBORN CHILD'S
17    MOTHER. In reasonable medical judgment, the child's mother has
18    a condition that so complicates her medical condition that it
19    necessitates the termination of her pregnancy to avert her
20    death or to avert serious risk of substantial physical
21    impairment of a major bodily function. This term does not
22    include a condition based on a claim that the woman is
23    suffering from an emotional condition or a mental illness
24    which will cause her to engage in conduct that intends to
25    result in her death or the death of her unborn child. However,

HB314

1    the condition may exist if a second physician who is licensed
2    in Alabama as a psychiatrist, with a minimum of three years of
3    clinical experience, examines the woman and documents that the
4    woman has a diagnosed serious mental illness and because of
5    it, there is reasonable medical judgment that she will engage
6    in conduct that could result in her death or the death of her
7    unborn child. If the mental health diagnosis and likelihood of
8    conduct is confirmed as provided in this act, and it is
9    determined that a termination of her pregnancy is medically
10   necessary to avoid the conduct, the termination may be
11   performed and shall be only performed by a physician licensed
12   in Alabama in a hospital as defined in the Alabama
13   Administrative Code and to which he or she has admitting
14   privileges.

15           (7) UNBORN CHILD, CHILD or PERSON. A human being,
16   specifically including an unborn child in utero at any stage
17   of development, regardless of viability.

18           (8) WOMAN. A female human being, whether or not she
19   has reached the age of majority.

20           Section 4. (a) It shall be unlawful for any person
21   to intentionally perform or attempt to perform an abortion
22   except as provided for by subsection (b).

23           (b) An abortion shall be permitted if an attending
24   physician licensed in Alabama determines that an abortion is
25   necessary in order to prevent a serious health risk to the

HB314

1     unborn child's mother. Except in the case of a medical

2     emergency as defined herein, the physician's determination

3     shall be confirmed in writing by a second physician licensed

4     in Alabama. The confirmation shall occur within 180 days after

5     the abortion is completed and shall be prima facie evidence

6     for a permitted abortion.

7         Section 5. No woman upon whom an abortion is

8     performed or attempted to be performed shall be criminally or

9     civilly liable. Furthermore, no physician confirming the

10    serious health risk to the child's mother shall be criminally

11    or civilly liable for those actions.

12        Section 6. (a) An abortion performed in violation of

13    this act is a Class A felony.

14        (b) An attempted abortion performed in violation of

15    this act is a Class C felony.

16        Section 7. This act shall not apply to a physician

17    licensed in Alabama performing a termination of a pregnancy or

18    assisting in performing a termination of a pregnancy due to a

19    medical emergency as defined by this act.

20        Section 8. The construction of existing statutes and

21    regulations that regulate or recognize abortion in Alabama

22    that are in conflict with or antagonistic to this act shall be

23    repealed as null and void and shall recognize the prohibition

24    of abortion as provided in this act. If this act is challenged

25    and enjoined pending a final judicial decision, the existing

HB314

1    statutes and regulations that regulate or recognize abortion
2    shall remain in effect during that time.
3            Section 9. Although this bill would have as its
4    purpose or effect the requirement of a new or increased
5    expenditure of local funds, the bill is excluded from further
6    requirements and application under Amendment 621, now
7    appearing as Section 111.05 of the Official Recompilation of
8    the Constitution of Alabama of 1901, as amended, because the
9    bill defines a new crime or amends the definition of an
10   existing crime.
11           Section 10. This act shall become effective six
12   months following its passage and approval by the Governor, or
13   its otherwise becoming law.

HB314

1

2


3    _____

4            Speaker of the House of Representatives


5    _____

6        President and Presiding Officer of the Senate


7                    House of Representatives
8            I hereby certify that the within Act originated in
9    and was passed by the House 30-APR-19.
10
11                          Jeff Woodard
12                          Clerk
13


14    _____
15
16    Senate          _____14-MAY-19_____          Passed
17

# EXHIBIT B

# ORDER OF THE STATE HEALTH OFFICER
# SUSPENDING CERTAIN PUBLIC GATHERINGS
# DUE TO RISK OF INFECTION BY COVID-19

## (APPLICABLE STATEWIDE)

### AMENDED MARCH 27, 2020

**WHEREAS**, Coronavirus Disease 2019 (COVID-19) has been detected in Alabama; and

**WHEREAS,** the appearance of COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people; and

**WHEREAS**, the State Board of Health has designated COVID-19 to be a disease of epidemic potential, a threat to the health and welfare of the public, or otherwise of public health importance; and

**WHEREAS,** on March 13, 2020, on recommendation of the State Health Officer, Kay Ivey, Governor of the State of Alabama, declared a state public health emergency exists in the State of Alabama; and

**WHEREAS,** on March 16, 2020, the Jefferson County Health Officer, in response to a rapidly growing number of cases of COVID-19 being detected in Jefferson County, issued an order suspending certain public gatherings in that county; and

**WHEREAS**, on March 17, 2020, the State Health Officer issued a similar order for counties surrounding Jefferson, including Blount, St. Clair, Shelby, Tuscaloosa, and Walker Counties, and

**WHEREAS,** on March 19, 2020, the State Health Officer issued an order, and on March 20, 2020, an amended order, of statewide application suspending certain public gatherings;

**WHEREAS,** further social distancing measures are necessary to be implemented on a statewide basis to prevent the spread of COVID-19; and

**WHEREAS,** Ala. Code § 22-2-2(4), authorizes the State Health Officer, on behalf of the State Board of Health, to direct that conditions prejudicial to health in public places within the State be abated;

**NOW THEREFORE, THESE PREMISES CONSIDERED**, it is ordered that the following be implemented statewide:

1. Effective March 28, 2020 at 5:00 P.M., all non-work related gatherings of 10 persons or more, or non-work related gatherings of any size that cannot maintain a consistent six-foot

distance between persons, are prohibited. Employers shall take all reasonable steps to meet these standards for employees and customers.

2. Effective March 28, 2020 at 5:00 P.M., the following "non-essential" businesses, venues, and activities shall be closed to non-employees or not take place:

a.      Entertainment venues as follows:
- (1) Night clubs
- (2) Bowling alleys
- (3) Arcades
- (4) Concert venues
- (5) Theaters, auditoriums, and performing arts centers
- (6) Tourist attractions (including museums and planetariums)
- (7) Racetracks
- (8) Indoor children's play areas
- (9) Adult entertainment venues
- (10) Casinos
- (11) Bingo halls
- (12) Venues operated by social clubs

b.      Athletic facilities and activities as follows:
- (1) Fitness centers and commercial gyms
- (2) Spas and public or commercial swimming pools
- (3) Yoga, barre, and spin facilities
- (4) Spectator sports
- (5) Sports that involve interaction with another person of closer than 6 feet
- (6) Activities that require use of shared sporting apparatus and equipment
- (7) Activities on commercial or public playground equipment

c.      Close-contact service providers as follows:
- (1) Barber shops
- (2) Hair salons
- (3) Waxing salons
- (4) Threading salons
- (5) Nail salons and spas
- (6) Body-art facilities and tattoo services
- (7) Tanning salons
- (8) Massage-therapy establishments and massage services

d.      Retail stores as follows:
- (1) Furniture and home-furnishings stores
- (2) Clothing, shoe, and clothing-accessory stores
- (3) Jewelry, luggage, and leather goods stores
- (4) Department stores
- (5) Sporting goods stores
- (6) Book, craft, and music stores

3. Effective March 19, 2020, at 5:00 P.M., all beaches shall be closed. For purposes of this section, the term "beach" means the sandy shoreline area abutting the Gulf of Mexico, whether privately or publicly owned, including beach access points.

4. Effective Friday, March 20, 2020, all regular programs at Senior Citizen Centers shall be ended except that Senior Citizen Centers and their partners are urged to assure that their clients continue to receive needed meals via curbside pick-up or delivery.

5. Effective today, the following shall be closed:

a.      In-person instruction or classes at all schools, public and private, including but not limited to: elementary, secondary, postsecondary, technical, or specialty schools, and colleges and universities.

(1) This order is not intended to prevent any employers from making continued necessary staffing decisions. Employers are authorized to advise employees to work from home or maintain flexible work schedules.  If working from home is not feasible, the employee should practice social distancing (by maintaining consistent six-foot distance between persons) and follow public health guidelines.

(2) This order shall not apply to daytime special activities programs provided by local boards of education for children, ages 6 through 12 as of March 13, 2020, of First Responders (including EMS and Fire Services) and Licensed Healthcare Providers, and their essential employees, and essential employees of the following categories of employers: State and Local Governments,  Law Enforcement, Hospitals, Nursing Home/Long Term Care Facilities (including Assisted Living and Specialty Care Assisted Living Facilities), End Stage Renal Disease Treatment Centers, Pharmacies, and Grocery Stores. In these special activities programs, 12 or more children shall not be allowed in any one room at the same time, and operators of these programs are encouraged to use enhanced sanitation practices consistent with guidance from the Centers for Disease Control and Prevention and the Alabama Department of Public Health.

b.      Facilities providing child day care, including any child day care facility described in Ala. Code § 38-7-2, at which 12 or more children are in a room or other enclosed or separated space at the same time.  Center employees are encouraged to use enhanced sanitation and social-distancing practices consistent with guidance from the Centers for Disease Control and Prevention and the Alabama Department of Public Health. This Order does not change the Minimum Standards for Day Care promulgated by the Alabama Department of Human Resources, except that 12 or more children shall not be allowed in a room or other enclosed or separated space at the same time.

6. Effective immediately, all Hospitals and Nursing Home/Long Term Care Facilities (including Assisted Living and Specialty Care Assisted Living Facilities) shall prohibit visitation of all visitors, as defined by the facility, and non-essential health care personnel, except for certain compassionate care situations such as maternity and end-of-life.

7. Effective March 28, 2020 at 5:00 P.M., all dental, medical, or surgical procedures shall be postponed until further notice, subject to the following exceptions:

a.      Dental, medical, or surgical procedures necessary to treat an emergency medical condition. For purposes of this order, "emergency medical condition" is defined as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbances, and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected by a person's licensed medical provider to result in placing the health of the person in serious jeopardy or causing serious impairment to bodily functions or serious dysfunction of bodily organs.

b.      Dental, medical, or surgical procedures necessary to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment.

8. Effective March 19, 2020, at 5:00 P.M., all restaurants, bars, breweries, or similar establishments shall not permit on-premises consumption of food or drink.

a.      Such establishments may continue to offer food for take-out or delivery provided the social distancing protocols, including maintaining a consistent six-foot distance between persons, are followed.

b.      Such establishments are strongly encouraged to offer online ordering and curbside pick-up of food.

c.      Hospital food service areas are excluded from this order provided they have their own social distancing plan.

9. If organizers or sponsors of otherwise suspended events desire, they may submit a request for an exemption from this order.  While the State Health Officer is under no obligation to grant such an exemption, it shall be fairly considered based on the following criteria:

a.      Effective measures have been taken to identify those attending the event who may potentially be affected with COVID-19, including but not limited to personal testing for the disease or submission of current medical clearances to the organizer.

b.      Effective measures have been taken to prevent the spread of infection even by those that are infected while not symptomatic, including the provision of anti-infection measures such as proper face masks, personal sanitation measures, and other measures that may be considered proper.

The State Health Officer's discretion under this section includes the discretion to refer exemption requests from Jefferson and Mobile Counties to the respective County Health Officer for those counties for evaluation as described above.

10. This Order shall remain in full force and effect until 5:00 P.M. on April 17, 2020. Prior to 5:00 P.M. on April 17, 2020, a determination shall be made whether to extend this Order—or, if circumstances permit, to relax this Order.

4

11. This Order supersedes and preempts all orders previously issued by the State Health Officer and Jefferson and Mobile County Health Officers concerning COVID-19 mitigation measures. After the date this amended order is issued, the Jefferson and Mobile County Health Officers are authorized, after approval by the State Health Officer, to implement more stringent measures as local circumstances require.

Done on this 27th day of March, 2020.

_____
Scott Harris, M.D., M.P.H.
State Health Officer

5

# EXHIBIT C

**FORM APA4**
**Revised 1/2018**

## CERTIFICATION OF EMERGENCY RULES
## FILED WITH LEGISLATIVE SERVICES AGENCY
## OTHNI LATHRAM, DIRECTOR

Pursuant to <u>Code of Alabama 1975</u>, §§41-22-5(b) and 41-22-6(c)(2) a. and b.

I certify that the attached amended emergency rule is a correct copy as promulgated and adopted on the 27th day of March 2020.

AGENCY NAME:                 Alabama Department of Public Health

RULE NO. AND TITLE:          420-4-1-.13 ER
                             Statewide Social Distancing Requirements in Response to
                             COVID-19

EFFECTIVE DATE OF RULE:      March 27, 2020

EXPIRATION DATE:             120 days

NATURE OF EMERGENCY:         Alabama Department of Public Health requests filing of
                             this rule in response to a current public health emergency.

STATUTORY AUTHORITY:         <u>Code of Alabama 1975</u>, §§ 22-2-8, 22-11A-1

SUBJECT OF RULE TO BE ADOPTED ON PERMANENT BASIS ____ YES _X_ NO

NAME, ADDRESS, AND TELEPHONE NUMBER OF PERSON TO CONTACT FOR COPY
OF RULE:

                             P. Brian Hale, General Counsel
                             Alabama Department of Public Health
                             201 Monroe Street, Suite 1540
                             Montgomery, Alabama 36104
                             334-206-5209

                             Signature of officer authorized to
                             Promulgate and adopt rules and
                             Regulations or his or her deputy

REC'D & FILED

MAR 2 7 2020

LEGISLATIVE SVC AGENCY

420-4-1-.13 ER, Statewide Social Distancing Requirements in Response to COVID-19

# ORDER OF THE STATE HEALTH OFFICER
# SUSPENDING CERTAIN PUBLIC GATHERINGS
# DUE TO RISK OF INFECTION BY COVID-19

## (APPLICABLE STATEWIDE)

### AMENDED MARCH 27, 2020

**WHEREAS**, Coronavirus Disease 2019 (COVID-19) has been detected in Alabama; and

**WHEREAS,** the appearance of COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people; and

**WHEREAS**, the State Board of Health has designated COVID-19 to be a disease of epidemic potential, a threat to the health and welfare of the public, or otherwise of public health importance; and

**WHEREAS,** on March 13, 2020, on recommendation of the State Health Officer, Kay Ivey, Governor of the State of Alabama, declared a state public health emergency exists in the State of Alabama; and

**WHEREAS,** on March 16, 2020, the Jefferson County Health Officer, in response to a rapidly growing number of cases of COVID-19 being detected in Jefferson County, issued an order suspending certain public gatherings in that county; and

**WHEREAS**, on March 17, 2020, the State Health Officer issued a similar order for counties surrounding Jefferson, including Blount, St. Clair, Shelby, Tuscaloosa, and Walker Counties, and

**WHEREAS,** on March 19, 2020, the State Health Officer issued an order, and on March 20, 2020, an amended order, of statewide application suspending certain public gatherings;

**WHEREAS,** further social distancing measures are necessary to be implemented on a statewide basis to prevent the spread of COVID-19; and

**WHEREAS,** Ala. Code § 22-2-2(4), authorizes the State Health Officer, on behalf of the State Board of Health, to direct that conditions prejudicial to health in public places within the State be abated;

**NOW THEREFORE, THESE PREMISES CONSIDERED**, it is ordered that the following be implemented statewide:

1. Effective March 28, 2020 at 5:00 P.M., all non-work related gatherings of 10 persons or more, or non-work related gatherings of any size that cannot maintain a consistent six-foot

1

distance between persons, are prohibited. Employers shall take all reasonable steps to meet these standards for employees and customers.

2. Effective March 28, 2020 at 5:00 P.M., the following "non-essential" businesses, venues, and activities shall be closed to non-employees or not take place:

a.     Entertainment venues as follows:
- (1) Night clubs
- (2) Bowling alleys
- (3) Arcades
- (4) Concert venues
- (5) Theaters, auditoriums, and performing arts centers
- (6) Tourist attractions (including museums and planetariums)
- (7) Racetracks
- (8) Indoor children's play areas
- (9) Adult entertainment venues
- (10) Casinos
- (11) Bingo halls
- (12) Venues operated by social clubs

b.     Athletic facilities and activities as follows:
- (1) Fitness centers and commercial gyms
- (2) Spas and public or commercial swimming pools
- (3) Yoga, barre, and spin facilities
- (4) Spectator sports
- (5) Sports that involve interaction with another person of closer than 6 feet
- (6) Activities that require use of shared sporting apparatus and equipment
- (7) Activities on commercial or public playground equipment

c.     Close-contact service providers as follows:
- (1) Barber shops
- (2) Hair salons
- (3) Waxing salons
- (4) Threading salons
- (5) Nail salons and spas
- (6) Body-art facilities and tattoo services
- (7) Tanning salons
- (8) Massage-therapy establishments and massage services

d.     Retail stores as follows:
- (1) Furniture and home-furnishings stores
- (2) Clothing, shoe, and clothing-accessory stores
- (3) Jewelry, luggage, and leather goods stores
- (4) Department stores
- (5) Sporting goods stores
- (6) Book, craft, and music stores

2

3. Effective March 19, 2020, at 5:00 P.M., all beaches shall be closed. For purposes of this section, the term "beach" means the sandy shoreline area abutting the Gulf of Mexico, whether privately or publicly owned, including beach access points.

4. Effective Friday, March 20, 2020, all regular programs at Senior Citizen Centers shall be ended except that Senior Citizen Centers and their partners are urged to assure that their clients continue to receive needed meals via curbside pick-up or delivery.

5. Effective today, the following shall be closed:

    a.      In-person instruction or classes at all schools, public and private, including but not limited to: elementary, secondary, postsecondary, technical, or specialty schools, and colleges and universities.

        (1) This order is not intended to prevent any employers from making continued necessary staffing decisions. Employers are authorized to advise employees to work from home or maintain flexible work schedules.  If working from home is not feasible, the employee should practice social distancing (by maintaining consistent six-foot distance between persons) and follow public health guidelines.

        (2) This order shall not apply to daytime special activities programs provided by local boards of education for children, ages 6 through 12 as of March 13, 2020, of First Responders (including EMS and Fire Services) and Licensed Healthcare Providers, and their essential employees, and essential employees of the following categories of employers: State and Local Governments,  Law Enforcement, Hospitals, Nursing Home/Long Term Care Facilities (including Assisted Living and Specialty Care Assisted Living Facilities), End Stage Renal Disease Treatment Centers, Pharmacies, and Grocery Stores. In these special activities programs, 12 or more children shall not be allowed in any one room at the same time, and operators of these programs are encouraged to use enhanced sanitation practices consistent with guidance from the Centers for Disease Control and Prevention and the Alabama Department of Public Health.

    b.      Facilities providing child day care, including any child day care facility described in Ala. Code § 38-7-2, at which 12 or more children are in a room or other enclosed or separated space at the same time.  Center employees are encouraged to use enhanced sanitation and social-distancing practices consistent with guidance from the Centers for Disease Control and Prevention and the Alabama Department of Public Health. This Order does not change the Minimum Standards for Day Care promulgated by the Alabama Department of Human Resources, except that 12 or more children shall not be allowed in a room or other enclosed or separated space at the same time.

6. Effective immediately, all Hospitals and Nursing Home/Long Term Care Facilities (including Assisted Living and Specialty Care Assisted Living Facilities) shall prohibit visitation of all visitors, as defined by the facility, and non-essential health care personnel, except for certain compassionate care situations such as maternity and end-of-life.

7. Effective March 28, 2020 at 5:00 P.M., all dental, medical, or surgical procedures shall be postponed until further notice, subject to the following exceptions:

    a.    Dental, medical, or surgical procedures necessary to treat an emergency medical condition. For purposes of this order, "emergency medical condition" is defined as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbances, and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected by a person's licensed medical provider to result in placing the health of the person in serious jeopardy or causing serious impairment to bodily functions or serious dysfunction of bodily organs.

    b.    Dental, medical, or surgical procedures necessary to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment.

8. Effective March 19, 2020, at 5:00 P.M., all restaurants, bars, breweries, or similar establishments shall not permit on-premises consumption of food or drink.

    a.    Such establishments may continue to offer food for take-out or delivery provided the social distancing protocols, including maintaining a consistent six-foot distance between persons, are followed.

    b.    Such establishments are strongly encouraged to offer online ordering and curbside pick-up of food.

    c.    Hospital food service areas are excluded from this order provided they have their own social distancing plan.

9. If organizers or sponsors of otherwise suspended events desire, they may submit a request for an exemption from this order.  While the State Health Officer is under no obligation to grant such an exemption, it shall be fairly considered based on the following criteria:

    a.    Effective measures have been taken to identify those attending the event who may potentially be affected with COVID-19, including but not limited to personal testing for the disease or submission of current medical clearances to the organizer.

    b.    Effective measures have been taken to prevent the spread of infection even by those that are infected while not symptomatic, including the provision of anti-infection measures such as proper face masks, personal sanitation measures, and other measures that may be considered proper.

The State Health Officer's discretion under this section includes the discretion to refer exemption requests from Jefferson and Mobile Counties to the respective County Health Officer for those counties for evaluation as described above.

10. This Order shall remain in full force and effect until 5:00 P.M. on April 17, 2020. Prior to 5:00 P.M. on April 17, 2020, a determination shall be made whether to extend this Order—or, if circumstances permit, to relax this Order.

11. This Order supersedes and preempts all orders previously issued by the State Health Officer and Jefferson and Mobile County Health Officers concerning COVID-19 mitigation measures. After the date this amended order is issued, the Jefferson and Mobile County Health Officers are authorized, after approval by the State Health Officer, to implement more stringent measures as local circumstances require.

Done on this 27th day of March, 2020.

_____
Scott Harris, M.D., M.P.H.
State Health Officer

Author: Scott Harris, M.D., M.P.H.
Statutory Authority: Code of Ala. 1975, Section 22-22-2(4)
History:  Filed March 27, 2020, effective March 27, 2020.

5

# EXHIBIT D



**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

STEVE MARSHALL
ATTORNEY GENERAL

501 WASHINGTON AVENUE
MONTGOMERY, AL 36130
(334) 242-7300
WWW.AGO.ALABAMA.GOV

March 21, 2020
*Updated on March 27, 2020*

## GUIDANCE FOR LAW ENFORCEMENT

FROM:     Steve Marshall
          Attorney General
SUBJECT:  Enforcement of State Health Order

On Thursday, March 19th, the State Public Health Officer issued an order suspending certain public gatherings to prevent the spread of COVID-19. That order was amended on Friday, March 20th to clarify the intended application of the order for businesses and their employees. In response to changing conditions, a new state health order was issued on March 27, 2020 and supersedes all previous orders.

The March 27th order was also adopted as an emergency rule by the State Health Officer, pursuant to the authority granted by regulation 420-1-2-.07(e) of the Alabama Administrative Code (the State Health Officer may adopt an emergency rule without notice or hearing if there is an immediate danger to public health), and in accordance with Sections 22-2-2(6) (empowering the agency to adopt rules and giving those rules the force of law) and 22-2-8 (the State Health Officer may act on behalf of the State Committee of Public Health when it is not in session) of the Code of Alabama. ALA. ADMIN. CODE 420-1-2-.07(e); ALA. CODE §§ 22-2-2(6), -8.

The effect of the order and the promulgation of the emergency rule is that the March 27th order is now enforceable under Section 22-2-14, which states:

> Any person who knowingly violates or fails or refuses to obey or comply with any rule or regulation adopted and promulgated by the State Board of Health of this state shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $25.00 nor more than $500.00 and, if the violation or failure or refusal to obey or comply with such rule or regulation is a continuing one, each day's violation, or failure or refusal shall constitute a separate offense and shall be punished accordingly.

ALA. CODE § 22-2-14. Given the criminal nature of a violation of Section 22-2-14, prosecutors and law enforcement should be aware of their authority to act as

needed to enforce the state health order. While the unprecedented nature of this pandemic and the government's evolving response seem to demand some restraint related to criminal enforcement of this order, **if a violator has been made aware of the state health order and the refusal to comply presents a threat to public health and safety, the penalties of Section 22-2-14 are available as an enforcement tool.**

**NOTE:** Following the issuance of the March 20th amended state health order, the Attorney General's Office received questions related to enforcement of the order's provision on "elective" medical procedures. Section 7 of the March 27th order provides greater detail for healthcare providers and the general public on procedures that must be halted during the state of emergency. **Be advised that this order applies to all healthcare facilities and providers, without exception**. The order does not offer a total exemption for any specific type of provider or clinic, but instead provides exemptions from mandatory postponement only for two distinct classes of procedures: a) those necessary to treat an "emergency medical condition"; and b) those necessary to avoid serious harm from an underlying condition or disease, or are necessary as part of a patient's ongoing and active treatment. Violations of this order are enforceable under Section 22-2-14.