APPEAL,CONFLICT_STMT,MHT−ClerkA

# U.S. District Court
# Alabama Middle District (Montgomery)
# CIVIL DOCKET FOR CASE #: 2:19−cv−00365−MHT−JTA
## *Internal Use Only*

Robinson et al v. Marshall, et al.
Assigned to: Honorable Judge Myron H. Thompson
Referred to: Honorable Judge Jerusha T. Adams
Case in other court:  20−11270−B
Cause: 42:1983 Civil Rights Act

Date Filed: 05/24/2019
Jury Demand: None
Nature of Suit: 950 Constitutional − State Statute
Jurisdiction: Federal Question

**Plaintiff**

**Yashica Robinson**
*M.D., on behalf of themselves, their patients, physicians, clinic administrators, and staff*

represented by

**Alexa Kolbi−Molinas**
American Civil Liberties Union
125 Broad St.; 18th Floor
New York, NY 10004
212−549−2633
Fax: 212−549−2650
Email: akolbi−molinas@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Brock Boone**
Southern Poverty Law Center
400 Washington Avenue
Montgomery, AL 36104
(334) 956−8468
Fax: (334) 956−8481
Email: brock.boone@splcenter.org
*TERMINATED: 02/19/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Carrie Y. Flaxman**
Planned Parenthood Federation of America
1110 Vermont Ave, NW − Ste 300
Washington, DC 20005
202−973−4830
Email: carrie.flaxman@ppfa.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Meagan Marlis Burrows**
American Civil Liberties Union
Foundation

125 Broad St − 18th Floor
New York, NY 10004
212−549−2633
Email: mburrows@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Randall Charles Marshall**
ACLU of Alabama Foundation, Inc.
P.O. Box 6179
Montgomery, AL 36106−0179
334−420−1741
Fax: 334−269−5666
Email: rmarshall@aclualabama.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Susan Lambiase**
Planned Parenthood Federation of America
123 William St − 9th Floor
New York, NY 10038
212−261−4750
Fax: 212−247−6811
Email: susan.lambiase@ppfa.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

<u>**Plaintiff**</u>

**Alabama Women's Center**
*on behalf of themselves, their patients, physicians, clinic administrators, and staff*

represented by **Alexa Kolbi−Molinas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Brock Boone**
(See above for address)
*TERMINATED: 02/19/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Carrie Y. Flaxman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Meagan Marlis Burrows**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Randall Charles Marshall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Susan Lambiase**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Plaintiff**

**Planned Parenthood Southeast Inc.**
*on behalf of themselves, their patients, physicians, clinic administrators, and staff*

represented by **Brock Boone**
(See above for address)
*TERMINATED: 02/19/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Carrie Y. Flaxman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Randall Charles Marshall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Susan Lambiase**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Plaintiff**

**Reproductive Health Services**
*on behalf of themselves, their patients, physicians, clinic administrators, and staff*

represented by **Alexa Kolbi−Molinas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bar Status: Pro Hac Vice**

**Brock Boone**
(See above for address)
*TERMINATED: 02/19/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Carrie Y. Flaxman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Meagan Marlis Burrows**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Randall Charles Marshall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Susan Lambiase**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Plaintiff**

**West Alabama Women's Center**
*on behalf of themselves, their patients,*
*physicians, clinic administrators, and*
*staff*

represented by **Alexa Kolbi−Molinas**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Brock Boone**
(See above for address)
*TERMINATED: 02/19/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Carrie Y. Flaxman**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Meagan Marlis Burrows**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

**Randall Charles Marshall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Susan Lambiase**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Pro Hac Vice**

V.

**Defendant**

**Steven Marshall**                    represented by   **Alexander Barrett Bowdre**
*in his official capacity as Alabama*                  Alabama Atty General Office
*Attorney General*                                     501 Washington Ave
                                                       Montgomery, AL 36130
                                                       334−242−7300
                                                       Fax: 334−353−8400
                                                       Email: barrett.bowdre@alabamaag.gov
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       **Bar Status: Active**

                                                       **Brad A. Chynoweth**
                                                       State of Alabama
                                                       Office of the Attorney General
                                                       501 Washington Avenue
                                                       Post Office Box 300152
                                                       Montgomery, AL 36130
                                                       334.242.7997
                                                       Fax: 334.353.8440
                                                       Email: Brad.Chynoweth@AlabamaAG.gov
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       **Bar Status: Active**

                                                       **Brenton Merrill Smith**
                                                       Office of the Attorney General of Alabama

501 Washington Avenue
Montgomery, AL 36104
334−353−4336
Fax: 334−353−8400
Email: Brenton.Smith@AlabamaAG.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Edmund Gerard LaCour , Jr.**
Office of the Attorney General
501 Washington Ave
Montgomery, AL 36130
334−353−2196
Fax: 334−242−4891
Email: elacour@ago.state.al.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**James William Davis**
State of Alabama
Office of the Attorney General
P O Box 300152
Montgomery, AL 36130−0152
334−353−1356
Fax: 334−353−8440
Email: Jim.Davis@AlabamaAG.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

**Robert L. Broussard**
*in his official capacity as District*
*Attorney for Madison County*

represented by **Brad A. Chynoweth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

**Danny Carr**
*in his official capacity as District*
*Attorney of Jefferson County*

represented by **Robert David Segall**
Copeland Franco Screws & Gill
PO Box 347
Montgomery, AL 36101−0347
334−834−1180

Fax: 334−834−3172
Email: segall@copelandfranco.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

**Ashley Rich**
*in her official capacity as District Attorney for Mobile County*

represented by   **Brad A. Chynoweth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

**Daryl D. Bailey**
*in his official capacity as District Attorney for Montgomery County*

represented by   **Robert David Segall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

**Hays Webb**
*in his official capacity as District Attorney of Tuscaloosa County*

represented by   **Brad A. Chynoweth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Defendant**

**Scott Harris**
*M.D., in his official capacity as the State Health Officer at the Alabama State Department of Public Health*

represented by   **Brad A. Chynoweth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Brenton Merrill Smith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Bar Status: Active

**Dana Helton Billingsley**
Alabama Department of Public Health
201 Monroe Street
Suite 1540
Montgomery, AL 36104
334−206−7951
Fax: 334−206−5874
Email: dana.billingsley@adph.state.al.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Active

**James William Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Active

**Phillip Brian Hale**
Alabama Department of Public Health
P O Box 303017
Montgomery, AL 36130−3017
334−206−5209
Fax: 334−206−5874
Email: brian.hale@adph.state.al.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Active

**Defendant**

**Mark H. LeQuire**
*M.D., in his official capacity as*
*Chairman of the Alabama Board of*
*Medical Examiners*

represented by **Eric Wilson Hunter**
Alabama Board of Medical Examiners
P O Box 946
Montgomery, AL 36101
334−242−4116
Fax: 334−242−4155
Email: whunter@albme.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Active

**Defendant**

**James H. Walburn**
*M.D., in his official capacity as*
*Chairman of the Medical Licensure*
*Commission of Alabama*
*TERMINATED: 06/20/2019*

represented by **Wallace Damon Mills**
Wallace D. Mills, P.C.
621 South Hull Street
Montgomery, AL 36104
334−593−8053
Email: mills@copelandfranco.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
**Bar Status: Active**

**Movant**

**Greater Birmingham Chapter of the**      represented by   **Marcia S. Cohen**
**National Organization for Women**                         National Organization for Women
                                                            111 2nd Ave NE − Ste 706
                                                            St. Petersburg, FL 33701
                                                            727−894−4446
                                                            Fax: 727−894−6251
                                                            Email: legal@now.org
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            **Bar Status: Pro Hac Vice**

**Movant**

**Sixteen States**                        represented by   **Bryan McDaniel Taylor**
*States of Louisiana, Arkansas, Idaho,*                    Bachus Brom & Taylor LLC
*Indiana, Kentucky, Mississippi, Missouri,*                300 Vestavia Parkway
*Nebraska, Ohio, Oklahoma, South*                          Suite 3700
*Carolina, South Dakota, Tennessee,*                       Birmingham, AL 35216
*Texas, Utah, and West Virginia*                           334−595−9650
                                                           Email: btaylor@bachusbrom.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           **Bar Status: Active**

                                                           **Elizabeth Baker Murrill**
                                                           Louisiana Attorney General's Office
                                                           1885 N. Third Street
                                                           Baton Rouge, LA 70802
                                                           225−456−7544
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           **Bar Status: Pro Hac Vice**

                                                           **Joseph Scott St. John**
                                                           Louisiana Attorney General's Office
                                                           1885 N. Third Street
                                                           Baton Rouge, LA 70802
                                                           225−456−7544
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           **Bar Status: Pro Hac Vice**

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/24/2019 | 1 | | VERIFIED COMPLAINT for Declaratory and Injunctive Relief against Daryl D. Bailey, Robert L. Broussard, Danny Carr, Scott Harris, Mark H. LeQuire, Steven Marshall, Ashley Rich, James H. Walburn, & Hays Webb, filed by |

| | | |
|---|---|---|
| | | Planned Parenthood Southeast Inc., West Alabama Women's Center, Yashica Robinson, Reproductive Health Services, & Alabama Women's Center. ( Filing fee $400 receipt number 4602053655.) (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet, # 3 Receipt)(am, ) (Entered: 05/24/2019) |
| 05/24/2019 | 2 | Conflict Disclosure Statement filed by Planned Parenthood Southeast Inc. (am, ) (Entered: 05/24/2019) |
| 05/24/2019 | 3 | Conflict Disclosure Statement filed by Reproductive Health Services. (am, ) (Entered: 05/24/2019) |
| 05/24/2019 | 4 | Conflict Disclosure Statement filed by West Alabama Women's Center. (am, ) (Entered: 05/24/2019) |
| 05/24/2019 | 5 | Conflict Disclosure Statement filed by Yashica Robinson. (am, ) (Entered: 05/24/2019) |
| 05/24/2019 | 6 | Conflict Disclosure Statement filed by Alabama Women's Center. (am, ) (Entered: 05/24/2019) |
| 05/24/2019 | 7 | Summons Issued as to Daryl D. Bailey, Robert L. Broussard, Danny Carr, Scott Harris, Mark H. LeQuire, Steven Marshall, Ashley Rich, James H. Walburn, Hays Webb and mailed CMRRR w/copy of 1 Complaint. (am, ) (Entered: 05/24/2019) |
| 05/30/2019 | 8 | Return Receipt Card showing service of summons & complaint signed by Kimie Bush for Mark H. LeQuire served on 5/28/2019, answer due 6/18/2019. (djy, ) (Entered: 05/31/2019) |
| 05/30/2019 | 9 | Return Receipt Card showing service of summons & complaint signed by Kimie Bush for James H. Walburn served on 5/28/2019, answer due 6/18/2019. (djy, ) (Entered: 05/31/2019) |
| 05/30/2019 | 10 | Return Receipt Card showing service of summons & complaint signed by Cheryle Franks for Hays Webb served on 5/28/2019, answer due 6/18/2019. (djy, ) (Entered: 05/31/2019) |
| 05/30/2019 | 11 | Return Receipt Card showing service of summons & complaint signed by J. Braddock for Danny Carr served on 5/28/2019, answer due 6/18/2019. (djy, ) (Entered: 05/31/2019) |
| 05/30/2019 | 12 | Return Receipt Card showing service of summons & complaint signed by W. Myrick for Scott Harris served on 5/29/2019, answer due 6/19/2019. (djy, ) (Entered: 05/31/2019) |
| 05/31/2019 | 13 | Motion for Alexa Kolbi−Olinas to Appear Pro Hac Vice by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Marshall, Randall) Modified on 5/31/2019 to include name of attorney (qc/djy, ). (Entered: 05/31/2019) |
| 05/31/2019 | 14 | Motion for Meagan Burrows to Appear Pro Hac Vice by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, West Alabama Women's Center. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Marshall, Randall) Modified on |

| | | | |
|---|---|---|---|
| | | | 5/31/2019 to include name of attorney (qc/djy, ). (Entered: 05/31/2019) |
| 05/31/2019 | 15 | | Motion for Carrie Flaxman to Appear Pro Hac Vice by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Marshall, Randall) Modified on 5/31/2019 to include name of attorney (qc/djy, ). (Entered: 05/31/2019) |
| 05/31/2019 | 16 | | NOTICE of Appearance by Dana Helton Billingsley on behalf of Scott Harris (Billingsley, Dana) (Entered: 05/31/2019) |
| 05/31/2019 | 17 | | Filing fee received for Alexa Kolbi−Olinas re: 13 motion appear pro hac vice: $ 50.00, receipt number 4602053706 (djy, ). (Entered: 05/31/2019) |
| 05/31/2019 | 18 | | Filing fee received for Meagan Burrows re: 14 motion appear pro hac vice: Filing fee: $ 50.00, receipt number 4602053707 (djy, ) Modified on 5/31/2019 to clarify text to reflect as re: 14 motion (qc/djy, ). (Entered: 05/31/2019) |
| 05/31/2019 | 19 | | Received pro hac vice Filing fee for Carrie Flaxman re: 15 motion: $ 50.00, receipt number 4602053708 (djy, ) (Entered: 05/31/2019) |
| 05/31/2019 | 20 | | **ORDER granting 13 , 14 , and 15 Motions for Leave to Appear Pro Hac Vice by attorneys Flaxman, Burrows, and Kolbi−Olinas. Signed by Honorable Judge Myron H. Thompson on 5/31/19. (djy, )** (Entered: 05/31/2019) |
| 05/31/2019 | | | ***Attorney Carrie Y. Flaxman for Alabama Women's Center,Carrie Y. Flaxman for Reproductive Health Services,Carrie Y. Flaxman for Yashica Robinson,Carrie Y. Flaxman for West Alabama Women's Center added pursuant to 15 motion to appear pro hac vice (NO PDF document attached to this notice). (djy, ) (Entered: 06/03/2019) |
| 05/31/2019 | 26 | | Return Receipt Card showing service of summons & complaint signed by Pam Crowe for Ashley Rich served on 5/29/2019, answer due 6/19/2019. (djy, ) (Entered: 06/04/2019) |
| 05/31/2019 | 27 | | Return Receipt Card showing service of summons & complaint signed by Suzy Vinson for Robert L. Broussard served on 5/29/2019, answer due 6/19/2019. (djy, ) (Entered: 06/04/2019) |
| 05/31/2019 | | | ***Attorney Phillip Brian Hale for Scott Harris added pursuant to 16 notice (NO PDF document attached to this notice). (djy, ) (Entered: 04/02/2020) |
| 06/03/2019 | 21 | | NOTICE of Appearance by Robert David Segall on behalf of Daryl D. Bailey, Danny Carr (Segall, Robert) (Entered: 06/03/2019) |
| 06/03/2019 | 22 | | Joint MOTION to Dismiss *def Carr Without Prejudice* by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Text of Proposed Order)(Marshall, Randall) Modified on 6/6/2019 to clarify text to reflect as also filed on behalf of Daryl Bailey and Danny Carr (qc/djy, ). (Entered: 06/03/2019) |
| 06/03/2019 | 23 | | Joint MOTION to Dismiss *def Bailey Without Prejudice* by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, |

| | | | |
|---|---|---|---|
| | | | Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Text of Proposed Order)(Marshall, Randall) Modified on 6/6/2019 to clarify text to reflect as also filed on behalf of Danny Carr & Daryl Bailey (qc/djy, ). (Entered: 06/03/2019) |
| 06/03/2019 | 24 | | Joint MOTION to Dismiss *def Harris Without Prejudice* by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Text of Proposed Order)(Marshall, Randall) Modified on 6/6/2019 to clarify text to reflect as also filed on behalf of def Scott Harris (qc/djy, ). (Entered: 06/03/2019) |
| 06/03/2019 | 25 | | NOTICE of Appearance by Eric Wilson Hunter on behalf of Mark H. LeQuire (Hunter, Eric) (Entered: 06/03/2019) |
| 06/05/2019 | 28 | | Joint MOTION to Dismiss *Defendant LeQuire Without Prejudice* by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Text of Proposed Order)(Marshall, Randall) Modified on 6/6/2019 to clarify text to reflect as also filed on behalf of Mark LeQuire (qc/djy, ). (Entered: 06/05/2019) |
| 06/06/2019 | 29 | | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Danny Carr; Corporate Disclosures due by 6/17/2019. (Attachments: # 1 standing order & format)(djy, ) (Entered: 06/06/2019) |
| 06/06/2019 | 30 | | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Daryl Bailey; Corporate Disclosures due by 6/17/2019. (Attachments: # 1 standing order & format)(djy, ) (Entered: 06/06/2019) |
| 06/06/2019 | 31 | | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Mark LeQuire; Corporate Disclosures due by 6/17/2019. (Attachments: # 1 standing order & format)(djy, ) (Entered: 06/06/2019) |
| 06/06/2019 | 32 | | Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement sent to Scott Harris; Corporate Disclosures due by 6/17/2019. (Attachments: # 1 standing order & format)(djy, ) (Entered: 06/06/2019) |
| 06/06/2019 | 33 | | Corporate/Conflict Disclosure Statement by Mark H. LeQuire re 31 Notice of Deficiency requiring filing of Corporate Disclosure/Conflict Statement. (Hunter, Eric) (Entered: 06/06/2019) |
| 06/06/2019 | 34 | | Corporate/Conflict Disclosure Statement by Scott Harris. (Billingsley, Dana) Modified on 6/7/2019 to reflect as satisfying 32 notice of deficiency (qc/djy, ). (Entered: 06/06/2019) |
| 06/06/2019 | 35 | | Corporate/Conflict Disclosure Statement by Daryl D. Bailey. (Segall, Robert) Modified on 6/7/2019 to reflect as satisfying 30 notice of deficiency (qc/djy, ). (Entered: 06/06/2019) |
| 06/06/2019 | 36 | | Corporate/Conflict Disclosure Statement by Danny Carr. (Segall, Robert) Modified on 6/7/2019 to reflect as satisfying 29 notice of deficiency (qc/djy, ). (Entered: 06/06/2019) |
| 06/06/2019 | 37 | | NOTICE of Appearance by Brad A. Chynoweth on behalf of Robert L. Broussard, Steven Marshall, Ashley Rich, Hays Webb (Chynoweth, Brad) |

| | | | |
|---|---|---|---|
| | | | (Entered: 06/06/2019) |
| 06/06/2019 | 38 | | NOTICE of Appearance by James William Davis on behalf of Robert L. Broussard, Steven Marshall, Ashley Rich, Hays Webb (Davis, James) (Entered: 06/06/2019) |
| 06/06/2019 | 39 | | Corporate/Conflict Disclosure Statement by Robert L. Broussard. (Chynoweth, Brad) (Entered: 06/06/2019) |
| 06/06/2019 | 40 | | Corporate/Conflict Disclosure Statement by Steven Marshall. (Chynoweth, Brad) (Entered: 06/06/2019) |
| 06/06/2019 | 41 | | Corporate/Conflict Disclosure Statement by Ashley Rich. (Chynoweth, Brad) (Entered: 06/06/2019) |
| 06/06/2019 | 42 | | Corporate/Conflict Disclosure Statement by Hays Webb. (Chynoweth, Brad) (Entered: 06/06/2019) |
| 06/07/2019 | 43 | | Joint MOTION to Dismiss *Dfts Broussard, Webb, and Rich Without Prejudice* by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center, Steven Marshall, Robert L. Broussard, Ashley Rich, Hays Webb. (Attachments: # 1 Text of Proposed Order)(Marshall, Randall) Modified on 6/7/2019 to add as also filed on behalf of Dfts Marshall, Broussard, Rich, & Webb (alm, ). (Entered: 06/07/2019) |
| 06/07/2019 | 44 | | **ORDER granting 22 , 23 , 24 , 28 , & 43 Joint Motions to Dismiss; Dfts Danny Carr, Daryl D. Bailey, Scott Harris, Mark H. LeQuire, Robert L. Broussard, Ashley Rich, and Hays Webb are dismissed without prejudice from this action, as further set out in order. Signed by Honorable Judge Myron H. Thompson on 6/7/2019. (alm, )** (Entered: 06/07/2019) |
| 06/11/2019 | 45 | | NOTICE of Appearance by Edmund Gerard LaCour, Jr on behalf of Steven Marshall (LaCour, Edmund) (Entered: 06/11/2019) |
| 06/17/2019 | 46 | | WAIVER OF SERVICE Returned Executed by Planned Parenthood Southeast Inc., West Alabama Women's Center, Yashica Robinson, Reproductive Health Services, Alabama Women's Center. Steven Marshall waiver sent on 6/12/2019, answer due 8/12/2019. (Marshall, Randall) (Entered: 06/17/2019) |
| 06/19/2019 | 47 | | NOTICE of Appearance by Wallace Damon Mills on behalf of James H. Walburn (Mills, Wallace) (Entered: 06/19/2019) |
| 06/20/2019 | 48 | | Joint MOTION to Dismiss *Defendant Walburn without prejudice* by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Text of Proposed Order)(Marshall, Randall) Modified on 6/20/2019 to clarify text to reflect as also filed on behalf of James H. Walburn (qc/djy, ). (Entered: 06/20/2019) |
| 06/20/2019 | 49 | | **ORDER, upon agreement of the parties, it is ORDERED that: (1) the 48 Joint MOTION to Dismiss is granted; (2) Defendant James H. Walburn, M.D., is dismissed without prejudice from this action, and is terminated as a party; (3) Defendant Walburn and his employees, agents, and successors in office shall be bound by the terms of any injunctive (including but not limited to a temporary restraining order or** |

| | | | |
|---|---|---|---|
| | | | preliminary injunction), declaratory, and/or other relief against the Alabama Attorney General and/or any of the other defs by any court in this action so long as such relief remains in effect as to any party, as further set out in order. Signed by Honorable Judge Myron H. Thompson on 6/20/19. (Attachments: # 1 civil appeals checklist)(djy, ) (Entered: 06/20/2019) |
| 06/21/2019 | 50 | | MOTION for Preliminary Injunction by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Text of Proposed Order)(Kolbi−Molinas, Alexa) (Entered: 06/21/2019) |
| 06/21/2019 | 51 | | MEMORANDUM in Support re 50 MOTION for Preliminary Injunction filed by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Kolbi−Molinas, Alexa) (Entered: 06/21/2019) |
| 06/25/2019 | 52 | | ANSWER to 1 Complaint,, by Steven Marshall.(Chynoweth, Brad) (Entered: 06/25/2019) |
| 07/01/2019 | 53 | | Motion for Marcia Cohen to Appear Pro Hac Vice ( Filing fee $ 75.00 receipt number 4602054069.) by Greater Birmingham Chapter of the National Organization for Women. (Attachments: # 1 certificate of good standing, # 2 fee receipt)(djy, ) (Entered: 07/02/2019) |
| 07/02/2019 | 54 | | **TEXT ORDER granting 53 Motion for Marcia Cohen to Appear Pro Hac Vice. Signed by Honorable Judge Myron H. Thompson on 7/2/2019. (No pdf attached to this entry) (alm, )** (Entered: 07/02/2019) |
| 07/03/2019 | 55 | | **TEXT ORDER setting Telephone Conference for 7/15/2019 @ 02:45 PM before Honorable Judge Myron H. Thompson. Signed by Honorable Judge Myron H. Thompson on 7/3/19. Furnished to calendar group & AG. (No PDF document attached to this notice).(djy, )** (Entered: 07/03/2019) |
| 07/08/2019 | 56 | | MOTION for Susan Lambiase to Appear Pro Hac Vice by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Exhibit certificate of good standing, # 2 Text of Proposed Order)(Marshall, Randall) (Entered: 07/08/2019) |
| 07/08/2019 | 57 | | Pro Hac Vice filing fee received re 56 Motion: $ 75.00, receipt number 4602054144. (alm, ) (Entered: 07/09/2019) |
| 07/08/2019 | | | ***Attorney Susan Lambiase for Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, and West Alabama Women's Center added. (NO PDF document attached to this notice−See Docket entry 56 ). (djy, ) (Entered: 07/09/2019) |
| 07/09/2019 | 58 | | **TEXT ORDER granting 56 Motion for Susan Lambiase Leave to Appear Pro Hac Vice. Signed by Honorable Judge Myron H. Thompson on 7/9/19. (NO PDF document attached to this notice). (djy, )** (Entered: 07/09/2019) |
| 07/15/2019 | 59 | | STATUS REPORT *(Joint Report of Parties' Pre−Status Conference Meet−and−Confer)* by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West |

| | | | |
|---|---|---|---|
| | | | Alabama Women's Center. (Marshall, Randall) (Entered: 07/15/2019) |
| 07/15/2019 | 60 | | Minute Entry for proceedings held before Honorable Judge Myron H. Thompson: Telephone Conference held on 7/15/2019 (PDF available for court use only). (Recording Time 2:52 − 3:40.) (ag, ) (Entered: 07/16/2019) |
| 07/16/2019 | 61 | | **ORDER directing that on or before 8/5/2019, the def is to file a response to the plfs' 50 MOTION for Preliminary Injunction. Signed by Honorable Judge Myron H. Thompson on 7/16/19. (djy, )** (Entered: 07/16/2019) |
| 07/16/2019 | 62 | | **ORDER directing that the issue of discovery is set for submission, without oral argument, on 8/19/2019, with the defendant to file a brief by 8/5/2019, and the plaintiffs to do the same by 8/19/2019. Signed by Honorable Judge Myron H. Thompson on 7/16/19. (djy, )** (Entered: 07/16/2019) |
| 08/02/2019 | | | Mail Returned as Undeliverable. Copy of 61 & 62 orders sent to Susan Lambiase returned in mail with the following Notation, "Returned to sender" (NO PDF document attached to this notice). (djy, ) (Entered: 08/05/2019) |
| 08/05/2019 | 63 | | Response to Order re 62 Order,, Set Deadlines, by Steven Marshall. (LaCour, Edmund) (Entered: 08/05/2019) |
| 08/05/2019 | 64 | | RESPONSE to Motion re 50 MOTION for Preliminary Injunction filed by Steven Marshall. (LaCour, Edmund) (Entered: 08/05/2019) |
| 08/06/2019 | 65 | | **ORDER directing that, on or before 8/19/2019, plfs are to file a reply to def's 64 Response to the Motion filed motion for preliminary injunction. Signed by Honorable Judge Myron H. Thompson on 8/6/19. (djy, )** (Entered: 08/06/2019) |
| 08/19/2019 | 66 | | REPLY to 64 Response to Motion re 50 MOTION for Preliminary Injunction filed by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Kolbi−Molinas, Alexa) Modified on 8/20/2019 to clarify text to reflect as REPLY to 64 RESPONSE (qc/djy, ). (Entered: 08/19/2019) |
| 08/19/2019 | 67 | | Response to Order re 62 Order,, Set Deadlines, by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Kolbi−Molinas, Alexa) (Entered: 08/19/2019) |
| 10/29/2019 | 68 | | **OPINION. Signed by Honorable Judge Myron H. Thompson on 10/29/19. (djy, )** (Entered: 10/29/2019) |
| 10/29/2019 | 69 | | **PRELIMINARY INJUNCTION, In accordance with the opinion entered today, it isORDERED as follows: (1) plfs Dr. Yashica Robinson, M.D., Alabama Women's Center, Planned Parenthood Southeast, Inc., Reproductive Health Services, and West Alabama Women's Center's 50 motion for a preliminary injunction is granted to the extent set out below; (2) Def Steven Marshall, in his official capacity as Alabama Attorney General, and all those acting in concert with him are ENJOINED and RESTRAINED from: (a) enforcing Alabama Act No. 2019−189 as applied to pre−viability abortion, and (b) failing to give immediate notice of this preliminary injunction to all state and local officials who are responsible for enforcing the requirements of Alabama Act No. 2019−189; (3) This preliminary injunction shall remain in effect until this court resolves the** |

| | | | |
|---|---|---|---|
| | | | case in full; further ORDERING that the bond requirement of Fed. R. Civ. P. 65(c) is waived. Signed by Honorable Judge Myron H. Thompson on 10/29/19. (Attachments: # 1 civil appeals checklist)(djy, ) (Entered: 10/29/2019) |
| 11/19/2019 | | | Case reassigned to Honorable Judge Jerusha T. Adams. Honorable Judge Stephen Michael Doyle no longer assigned to the case as presiding judge. (No PDF document attached to this notice) (djy, ) (Entered: 11/19/2019) |
| 02/04/2020 | 70 | | MOTION to Withdraw as Attorney by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Boone, Brock) (Entered: 02/04/2020) |
| 02/19/2020 | 71 | | TEXT ORDER granting 70 Motion for Brock Boone to Withdraw as Attorney. Signed by Honorable Judge Myron H. Thompson on 2/19/2020. (NO PDF Document attached to this notice). (djy, ) (Entered: 02/19/2020) |
| 02/19/2020 | | | *** Attorney Brock Boone terminated pursuant to 71 text order (NO PDF document attached to this notice). (djy, ) (Entered: 02/19/2020) |
| 03/03/2020 | | | MEMORANDUM in Support re 80 MOTION for Leave to File *Amicus Brief* filed by Sixteen States. (No PDF document attached to this notice−See docket entry 80 ). (djy, ) (Entered: 03/31/2020) |
| 03/30/2020 | 72 | | Emergency MOTION for Leave to File *Supplemental Complaint* by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 Exhibit Proposed Supplemental Complaint, # 2 Text of Proposed Order)(Marshall, Randall) (Entered: 03/30/2020) |
| 03/30/2020 | 73 | | Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Attachments: # 1 TRO Brief, # 2 Text of Proposed Order)(Marshall, Randall). Added MOTION for Preliminary Injunction on 3/30/2020 as shown in main PDF document; Exhibits 1 through 4 contained within main PDF document (qc/djy, ). (Entered: 03/30/2020) |
| 03/30/2020 | | | MEMORANDUM OF LAW in Support re 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction filed by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (NO PDF document attached to this notice−see docket entry 73 ). (djy, ) (Entered: 03/30/2020) |
| 03/30/2020 | 74 | | TEXT ORDER setting conference call re: 73 Emergency MOTION for Temporary Restraining Order on 3/30/2020 @ 2:45 PM before Honorable Judge Myron H. Thompson; counsel will be notified by e−mail with the conference call number and access code. Signed by Honorable Judge Myron H. Thompson on 3/30/2020. Furnished to calendar group & AG. (NO PDF document attached to this notice).(djy, ) (Entered: 03/30/2020) |
| 03/30/2020 | 75 | | Minute Entry for proceedings held before Honorable Judge Myron H. Thompson: Telephone Conference held on 3/30/2020 (PDF available for court use only). (Court Reporter Patricia Starkie.) (ag, ) (Entered: 03/30/2020) |
| 03/30/2020 | 76 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center re 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction *Supplemental Authority: Planned Parenthood v. Abbott* (Attachments: # 1 Supplement Planned Parenthood v. Abbott)(Marshall, Randall) (Entered: 03/30/2020) |
| 03/30/2020 | 77 | | NOTICE by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center re 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction *Supplemental Authority: Preterm−Cleveland v. AG of Ohio* (Attachments: # 1 Supplement Preterm−Cleveland v. AG of Ohio)(Marshall, Randall) (Entered: 03/30/2020) |
| 03/30/2020 | 78 | | **ORDER directing that: (1) plfs' 72 Emergency MOTION for Leave to File Supplemental Complaint is granted; (2) The plaintiffs shall file their proposed supplemental complaint, labelled as a "first amended complaint," by 5:00 p.m. (central standard time) today; (3) The defendants may file objections to this order by 5 p.m. (central standard time) on 4/1/2020 ; The plaintiffs may file a response to the objections by 5:00 p.m. (central standard time) on April 3, 2020. Signed by Honorable Judge Myron H. Thompson on 3/30/2020. (djy, ) (Entered: 03/30/2020)** |
| 03/30/2020 | 79 | | AMENDED COMPLAINT *(First Amended Complaint)* against Steven Marshall, Daryl D. Bailey, Robert L. Broussard, Danny Carr, Scott Harris, Mark H. LeQuire, Ashley Rich, James H. Walburn, & Hays Webb filed by Planned Parenthood Southeast Inc., West Alabama Women's Center, Yashica Robinson, Reproductive Health Services, Alabama Women's Center. (Attachments: # 1 Exhibit A through D to First Amended Complaint)(Marshall, Randall) Modified on 3/31/2020 to clarify text to clearly identify exhibits (qc/djy, ). Modified on 4/2/2020 to reflect as also against Daryl D. Bailey, Robert L. Broussard, Danny Carr, Scott Harris, Mark H. LeQuire, Ashley Rich, James H. Walburn, & Hays Webb, these defs no longer terminated from case (qc/djy, ). (Entered: 03/30/2020) |
| 03/30/2020 | 80 | | MOTION for Leave to File *Amicus Brief* by Sixteen States. (Attachments: # 1 Proposed Amicus Brief, # 2 Text of Proposed Order Proposed Order)(Taylor, Bryan) Modified on 3/31/2020 to clarify text to correct name of filing party (qc/djy, ). (Entered: 03/30/2020) |
| 03/30/2020 | 81 | | NOTICE of Appearance by Bryan McDaniel Taylor on behalf of Sixteen States (Taylor, Bryan) (Entered: 03/30/2020) |
| 03/30/2020 | 82 | | NOTICE of Appearance by Brenton Merrill Smith on behalf of Steven Marshall (Smith, Brenton) (Entered: 03/30/2020) |
| 03/30/2020 | 83 | | **TEMPORARY RESTRAINING ORDER GRANTING plfs' 73 MOTION for Temporary Restraining Order; Defendants, their agents, and anyone acting in concert with them are TEMPORARILY RESTRAINED from enforcing, threatening to enforce, or otherwise requiring evidence of compliance with the March 27 order against or from abortion providers, clinics, and their staff. This temporary restraining order shall expire on 4/13/2020, at 5:00 p.m., unless extended by the court for good cause shown** |

| | | | |
|---|---|---|---|
| | | | or by agreement of the parties; further ORDERING that the security requirement of Fed. R. Civ. P. 65(c) is waived and that this injunctive relief is effective upon service; further ORDERING that defs are to submit their response to plf's 73 motion for a preliminary injunction by 5:00 p.m. on Wednesday, 4/1/2020; Plfs will then have until 5:00 p.m. on 4/3/2020, to reply; The court will immediately begin to reconsider the temporary restraining order in light of defs' responses. Signed by Honorable Judge Myron H. Thompson on 3/30/2020. (Attachments: # 1 civil appeals checklist)(djy, ) (Entered: 03/30/2020) |
| 03/30/2020 | 84 | | **ORDER** Setting an evidentiary hearing on plfs' 73 MOTION for Preliminary Injunction for 4/6/2020 @ 10:00 AM before Honorable Judge Myron H. Thompson, by videoconferencing; Deputy Clerk of Court Trey Granger will contact the attorneys to make the arrangements. Signed by Honorable Judge Myron H. Thompson on 3/30/2020. Furnished to calendar group, AG and Videoconference.(djy, ) (Entered: 03/30/2020) |
| 03/31/2020 | 85 | | **ORDER** directing that the 80 MOTION for Leave to File Amicus Brief is set for Submission, without oral argument, on 4/3/2020, with the parties to file response on or before said date. Signed by Honorable Judge Myron H. Thompson on 3/31/2020. (djy, ) (Entered: 03/31/2020) |
| 04/01/2020 | 86 | | Objection to re 78 Order *(Defendants' Objection to Order Granting Plaintiffs' Motion to File a Supplemental Complaint (Doc. 78))* filed by Steven Marshall. (Davis, James). (Entered: 04/01/2020) |
| 04/01/2020 | 87 | | MOTION to Dissolve Temporary Restraining Order re 83 Temporary Restraining Order by Steven Marshall. (Chynoweth, Brad) . (Entered: 04/01/2020) |
| 04/01/2020 | 88 | | Evidentiary Submission re 87 MOTION to Dissolve Temporary Restraining Order re 83 Temporary Restraining Order,,,,, Terminate Motions,,,,, Set Deadlines,,,, filed by Steven Marshall. (Attachments: # 1 Exhibit 03−27−2020 ADPH Order on Statewide Social Distancing Requirements, # 2 Exhibit 3−23−2020 ADPH Order Adopting Defintion of Definitive Care, # 3 Exhibit 3−20−2020 ADPH Order on Statewide Social Distancing, # 4 Exhibit 03−19−2020 ADPH Order on Statewide Social Distancing, # 5 Exhibit 03−17−2020 ADPH Order on Statewide Social Distancing, # 6 Exhibit 3−06−2020 ADPH Emergency Rule Adding COVID−19 as Notifiable Disease, # 7 Exhibit 03−13−2020 Governor's Proclamation of SOE, # 8 Exhibit 03−18−2020 Governor's Proclamation of SOE, # 9 Exhibit 03−20−2020 Governor's Proclamation of SOE, # 10 Exhibit 03−23−2020 Governor's Proclamation of SOE, # 11 Exhibit 03−26−2020 Governor's Proclamation of SOE, # 12 Exhibit 3−27−2020 AG Updated Guidance for Law Enforcement, # 13 Exhibit Induced Termination of Pregnancy Statistics for Alabama 2018, # 14 Exhibit Chart showing growth of COVID−19 in Alabama based on data from ADPH, # 15 Exhibit Scott Harris, MD − Declaration (signed) − 4.1.2020, # 16 Exhibit Declaration of Andy Mullins)(Chynoweth, Brad) (Entered: 04/01/2020) |
| 04/01/2020 | 89 | | BRIEF/MEMORANDUM in Support re 87 MOTION to Dissolve Temporary Restraining Order re 83 Temporary Restraining Order,,,,, Terminate Motions,,,,, Set Deadlines,,,, , 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary |

| | | | |
|---|---|---|---|
| | | | Injunction *and Opposition to Motion for Preliminary Injunction* filed by Steven Marshall. (Chynoweth, Brad) (Entered: 04/01/2020) |
| 04/01/2020 | 90 | | NOTICE of Appearance by Alexander Barrett Bowdre on behalf of Steven Marshall (Bowdre, Alexander) (Entered: 04/01/2020) |
| 04/01/2020 | | | OPPOSITION to 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction by Steven Marshall. (NO PDF document attached to this notice−See Docket entry 89 ). (djy, ) (Entered: 04/07/2020) |
| 04/02/2020 | 91 | | **ORDER directing that a telephone conference to discuss the 87 MOTION to Dissolve Temporary Restraining Order is set for 4/3/2020 09:00 AM (CST) before Honorable Judge Myron H. Thompson directing the clerk to forward call−in information to the parties. Signed by Honorable Judge Myron H. Thompson on 4/2/2020. Furnished to calendar group & AG to forward call−in information to the parties.(djy, )**. (Entered: 04/02/2020) |
| 04/02/2020 | 92 | | Motion to Appear Pro Hac Vice by Sixteen States. (Attachments: # 1 Certificate of Good Standing of Joseph Scott St. John, # 2 Certificate of Good Standing of Elizabeth Baker Murrill)(Taylor, Bryan) (Entered: 04/02/2020) |
| 04/02/2020 | 93 | | RESPONSE to Motion re 80 MOTION for Leave to File *Amicus Brief* filed by Steven Marshall. (Davis, James) (Entered: 04/02/2020) |
| 04/02/2020 | 94 | | NOTICE OF APPEAL as to 83 Temporary Restraining Order, by Steven Marshall (Davis, James) Modified on 4/2/2020 to clean up text. (dmn, ) Modified on 4/2/2020 to clarify text to reflect as also filed on behalf of Scott Harris (qc/djy, ). (Entered: 04/02/2020) |
| 04/02/2020 | 95 | | MOTION to Stay re 83 Temporary Restraining Order *(Defendants' Request for Stay of Enforcement of Temporary Restraining Order)* by Steven Marshall. (Davis, James). Modified on 4/2/2020 to clarify text to reflect as also filed on behalf of Scott Harris (qc/djy, ). (Entered: 04/02/2020) |
| 04/02/2020 | 96 | | **ORDER Setting telephone conference re: 95 MOTION to Stay re 83 Temporary Restraining Order for 4/3/2020 @ 09:00 AM (CST) before Honorable Judge Myron H. Thompson.. Signed by Honorable Judge Myron H. Thompson on 4/2/2020. Furnished to calendar group & AG.(djy, )** (Entered: 04/02/2020) |
| 04/02/2020 | 97 | | **ORDER directing that the parties be prepared to discuss the following issues on the call tomorrow, as further set out in order. Signed by Honorable Judge Myron H. Thompson on 4/2/2020. (djy, )** (Entered: 04/02/2020) |
| 04/02/2020 | | | ***Attorney James William Davis,Brad A. Chynoweth,Brenton Merrill Smith for Scott Harris added pursuant to 94 notice of appeal (NO PDF Document attached to this notice). (djy, ) (Entered: 04/02/2020) |
| 04/02/2020 | 98 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephone Conference Proceedings (PDF ACCESS RESTRICTED FOR 90 DAYS) held on March 30, 2020, before Judge Thompson. Court Reporter/Transcriber Starkie, Telephone number 334−262−1221. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may |

| | | |
|---|---|---|
| | | be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 4/23/2020. Redacted Transcript Deadline set for 5/4/2020. Release of Transcript Restriction set for 7/1/2020. (djy, ) (Entered: 04/02/2020) |
| 04/02/2020 | 99 | NOTICE by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center re 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction *(Corrected Declaration of Yashica Robinson, M.D)* (Attachments: # 1 Exhibit 1: Corrected Declaration)(Marshall, Randall) (Entered: 04/02/2020) |
| 04/02/2020 | | ***Attorney Elizabeth Baker Murrill,Joseph Scott St. John for Sixteen States added pursuant to 92 motion (NO PDF document attached to this notice). (djy, ) (Entered: 04/07/2020) |
| 04/03/2020 | 100 | Appeal Instructions sent to James W. Davis, counsel for Appellant Steve Marshall and Dr. Scott Harris, re 94 Notice of Appeal. A copy of the Transcript Information Form must be mailed to each court reporter from whom you are requesting a transcript. (Attachments: # 1 Transcript Information Form)(dmn, ) (Entered: 04/03/2020) |
| 04/03/2020 | 101 | Transmission of 94 Notice of Appeal, 83 Temporary Restraining Order, 73 Emergency Motion for Temporary Restraining Order, and Docket Sheet to US Court of Appeals. (Attachments: # 1 Docket Sheet and Appeal Record)(dmn, ) (Entered: 04/03/2020) |
| 04/03/2020 | 102 | USCA Case Number 20−11270−B for 94 Notice of Appeal filed by Scott Harris, Steven Marshall. Fee Status: Fee Not Paid. Awaiting Appellant's Certificate of Interested Persons due on or before 4/17/2020 as to Appellant Attorney General, State of Alabama. Awaiting Appellee's Certificate of Interested Persons due on or before 5/1/2020 as to Appellee Alabama Women's Center. (dmn, ) (Entered: 04/03/2020) |
| 04/03/2020 | 103 | Minute Entry for proceedings held before Honorable Judge Myron H. Thompson: Motion Hearing held on 4/3/2020 re 95 MOTION to Stay re 83 Temporary Restraining Order filed by Scott Harris, Steven Marshall (PDF available for court use only). (Court Reporter Patricia Starkie.) (ag, ) (Entered: 04/03/2020) |
| 04/03/2020 | 104 | (STRICKEN as an erroneous docket entry−Counsel states this was filed in wrong court) NOTICE of Appearance by Alexa Kolbi−Molinas on behalf of Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center (Kolbi−Molinas, Alexa) Modified on 4/3/2020 (qc/djy, ). (Entered: 04/03/2020) |
| 04/03/2020 | 105 | NOTICE of ERROR re 104 Notice of Appearance which is hereby STRICKEN pursuant to phone call from E−filing counsel stating the document was filed in the incorrect court. Please disregard this entry. (djy, ) (Entered: 04/03/2020) |
| 04/03/2020 | 106 | REPLY BRIEF re 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction filed by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Marshall, Randall) (Entered: 04/03/2020) |

| 04/03/2020 | 107 | | RESPONSE to Motion re 80 MOTION for Leave to File *Amicus Brief* filed by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Marshall, Randall) (Entered: 04/03/2020) |
|---|---|---|---|
| 04/03/2020 | 108 | | RESPONSE to 86 (OBJECTION) to 78 ORDER re 72 Emergency MOTION for Leave to File *Supplemental Complaint* filed by Alabama Women's Center, Planned Parenthood Southeast Inc., Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Marshall, Randall) Modified on 4/7/2020 to clarify text to reflect as RESPONSE to 86 OBJECTION (qc/djy, ). (Entered: 04/03/2020) |
| 04/03/2020 | 109 | | NOTICE by Scott Harris, Steven Marshall (Attachments: # 1 Exhibit April 3, 2020 Order of State Health Officer Scott Harris)(Davis, James) (Entered: 04/03/2020) |
| 04/03/2020 | 110 | | NOTICE by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center (Attachments: # 1 Supplemental Declaration, # 2 Attachment 1, # 3 Attachment 2)(Marshall, Randall) . (Entered: 04/03/2020) |
| 04/03/2020 | 111 | | **OPINION AND ORDER directing that the defs' 95 MOTION to Stay enforcement of the 83 Temporary Restraining Order is GRANTED to the extent that the court adopts its order the clarifications agreed upon by the defs regarding the application of the March 27 order to the plfs; the court does not, and cannot, address whether to grant or deny the defendants' 87 motion to dissolve the temporary restraining order since the court no longer has jurisdiction over the temporary restraining order. However, as the court notes above, were the temporary restraining order to be remanded back to this court, the court would vacate it and impose relief to the extent indicated in today's order; further ORDERING that the hearing on the 73 motion for preliminary injunction will proceed on Monday, April 6, 2020, at 10:00 a.m., by videoconferencing. Signed by Honorable Judge Myron H. Thompson on 4/3/2020. (Attachments: # 1 civil appeals checklist). Furnished to calendar group, AG & Video conference group.(djy, )** (Entered: 04/03/2020) |
| 04/03/2020 | 112 | | Emergency MOTION to Clarify *Order 111* by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Marshall, Randall) Modified on 4/7/2020 to clarify text to relate to 111 order (qc/djy, ). (Entered: 04/03/2020) |
| 04/03/2020 | 113 | | **ORDER directing that, to the extent that any provider could lawfully have considered the April 17 expiration date from the March 27 order, that provider can instead consider the new expiration date of April 30, 2020; plfs' 112 Emergency MOTION for clarification is GRANTED to that extent, as further set out in order. Signed by Honorable Judge Myron H. Thompson on 4/3/2020. (djy, )** (Entered: 04/03/2020) |
| 04/03/2020 | 123 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Telephone Conference Proceedings (PDF ACCESS RESTRICTED FOR 90 DAYS) held on April 3, 2020, before Judge Thompson. Court Reporter/Transcriber Starkie, Telephone number 334−262−1221. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be |

| | | |
|---|---|---|
| | | obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 4/24/2020. Redacted Transcript Deadline set for 5/4/2020. Release of Transcript Restriction set for 7/2/2020. (djy, ) (Entered: 04/06/2020) |
| 04/05/2020 | 114 | **ORDER: It is ORDERED that, by 8:00 a.m. (central time) on 4/6/2020, each party shall file and share with opposing counsel: (1) A list of witnesses they plan to present at the 10:00 a.m. hearing; and 2) For each witness, a brief summary of each witness's anticipated testimony, as further set out in order. Signed by Honorable Judge Myron H. Thompson on 4/5/2020. (wcl, )** (Entered: 04/05/2020) |
| 04/05/2020 | 115 | **ORDER: It is ORDERED that: (1) By 8:00 a.m. (central time) on 4/6/2020, each party shall file and share with opposing counsel a list of exhibits they plan to use or may use at the 10:00 a.m. hearing. The lists should be divided into exhibits they intend to or may have admitted, and those which are demonstrative only. Each exhibit shall be numbered and briefly described on the list (e.g., "defense exhibit 1: March 27 order") and demonstrative exhibits shall be labelled as such (e.g., "plf's demonstrative exhibit A: chart of XYZ"); (2) By 8:00 a.m. (central time) on 4/6/2020, each party shall email to courtroom deputy Anthony Green at Anthony_Green@almd.uscourts.gov, and to propord_Thompson@almd.uscourts.gov, each listed exhibit in printable PDF format, labelled in accordance with the list; (3) Before beginning to discuss an exhibit with a witness or with the court, counsel shall state on the record that they plan to refer to a particular exhibit, and shall wait until the courtroom deputy confirms that all necessary court participants have the exhibit ready. Opposing counsel shall state on the record when they have the exhibit ready before them. At this point, questioning about or discussion of the exhibit may begin; (4) To the extent possible, the hearing will proceed as if it were taking place in a courtroom. Accordingly, all parties should dress in regular courtroom attire and avoid consuming food or beverages other than water during the hearing. Additionally, all parties should attempt to keep distractions such as pets, music, etc., out of their immediate environment during the hearing; (5) Each participant in the videoconference shall sit alone in proximity to the camera, so that their faces can be easily viewed while they are speaking; Each videoconference participant shall have ready during the hearing a piece of paper with the words "AUDIO OUT" printed in large letters, so that they can display this page in front of the camera in case of a disruption in audio; (6) If any party is disconnected from the hearing or needs to leave the hearing, they shall send a text to Anthony Green to let him know immediately, or in advance if possible, so that he can stop the proceedings if necessary until they can rejoin. Mr. Green will provide his cell phone number to counsel separately; (7) The court assumes that one or both parties may wish to invoke the rule on exclusion of witnesses under Rule 615 of the Federal Rules of Evidence. Accordingly, each party shall ensure that their witnesses do not view or listen to the proceedings prior to their testimony, unless the witness is specifically authorized to do so by the court. Signed by Honorable Judge Myron H. Thompson on 4/5/2020. (wcl, )** (Entered: 04/05/2020) |
| 04/05/2020 | 116 | |

| | | Witness List by Scott Harris, Steven Marshall. (Davis, James) (Entered: 04/05/2020) |
|---|---|---|
| 04/05/2020 | 117 | Exhibit List by Scott Harris, Steven Marshall.. (Davis, James) (Entered: 04/05/2020) |
| 04/05/2020 | 118 | Witness List by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Marshall, Randall) (Entered: 04/05/2020) |
| 04/05/2020 | 119 | Exhibit List by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center.. (Marshall, Randall) (Entered: 04/05/2020) |
| 04/05/2020 | 120 | NOTICE by Scott Harris, Steven Marshall *Regarding Their Clarifications of the Public Health Order* (LaCour, Edmund) (Entered: 04/05/2020) |
| 04/06/2020 | 121 | Exhibit List *(First Supplemental Exhibit List)* by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center.. (Marshall, Randall) (Entered: 04/06/2020) |
| 04/06/2020 | | ORDER of USCA as to 94 Notice of Appeal filed by Scott Harris, Steven Marshall, 11th Circuit Appeal No. 20−11270−B: Joint Motion to voluntarily dismiss appeal filed by Appellants Attorney General, State of Alabama and Scott Harris is GRANTED by clerk.(dmn, )(no pdf) Modified on 4/6/2020 to correct file date. Document entered on 4/4/2020, filed on 4/6/2020. (dmn, ) (Entered: 04/06/2020) |
| 04/06/2020 | 122 | Clerk's Entry of Dismissal issued as Mandate of USCA as to 94 Notice of Appeal filed by Scott Harris, Steven Marshall, 11th Circuit Appeal No. 20−11270−B: Pursuant to Parties Joint motion for voluntary dismissal, FRAP Rule 42 and 11th Cir. R. 42−1(a), the above referenced appeal was duly entered dismissed on this date, effective April 6, 2020. (dmn, ) (Entered: 04/06/2020) |
| 04/06/2020 | 124 | Minute Entry for proceedings held before Honorable Judge Myron H. Thompson: Telephone Conference held on 4/6/2020 (PDF available for court use only). (Court Reporter Patricia Starkie.) (ag, ) (Entered: 04/06/2020) |
| 04/06/2020 | 125 | Minute Entry for proceedings held before Honorable Judge Myron H. Thompson: Motion Hearing held on 4/6/2020 re 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction filed by Alabama Women's Center, West Alabama Women's Center, Yashica Robinson, Reproductive Health Services (PDF available for court use only). (Court Reporter Patricia Starkie.) (Attachments: # 1 Witness List) (ag, ) (Additional attachment(s) added on 4/9/2020: # 2 Exhibit Plaintiffs Exhibits List) (ag, ). (Additional attachment(s) added on 4/9/2020: # 3 Plaintiff Exhibit 4, # 4 Plaintiff Exhibit 5, # 5 Plaintiff Exhibit 6, # 6 Plaintiff Exhibit 7, # 7 Plaintiff Exhibit 8, # 8 Plaintiff Exhibit 9, # 9 Plaintiff Exhibit 14, # 10 Plaintiff Exhibit 15, # 11 Plaintiff Exhibit 17, # 12 Plaintiff Exhibit 18, # 13 Plaintiff Exhibit 22) (ag, ). (Additional attachment(s) added on 4/9/2020: # 14 Plaintiff Exhibit 24) (ag, ). (Additional attachment(s) added on 4/9/2020: # 15 Plaintiff Exhibit 23) (ag, ). (Additional attachment(s) added on 4/9/2020: # 16 Defendants Exhibit List) (ag, ). (Additional attachment(s) added on 4/9/2020: # 17 Defendant's Exhibit #1, # |

| | | | |
|---|---|---|---|
| | | | 18 Defendants Exhibit 2, # 19 Defendants Exhibit 3, # 20 Defendants EXhbit 4, # 21 Defendants Exhibit 5, # 22 Defendants Exhibit 7, # 23 Defendants Exhibit 8, # 24 Defendants Exhibit 9, # 25 Defendants Exhibit 10, # 26 Defendants Exhibit 11, # 27 Defendants Exhibit 12, # 28 Defendants Exhibit 13, # 29 Defendants Exhibit 14, # 30 Defendants Exhibit 15, # 31 Defendants Exhibit 16, # 32 Defendants Exhibit 17) (ag, ). Modified on 4/9/2020 (ag, ). (Entered: 04/06/2020) |
| 04/07/2020 | 126 | | MOTION for Extension of Deadline deadline for filing response to Plaintiffs' First Amended Complaint re 79 Amended Complaint,,, *(Defendants' Unopposed Motion to Extend the Deadline for a Responsive Pleading)* by Scott Harris, Steven Marshall. (Davis, James) Modified on 4/10/2020 to correct event to Motion for extension of time to answer (qc/djy, ). (Entered: 04/07/2020) |
| 04/07/2020 | 127 | | Received Pro Hac Vice for Elizabeth Murrill re: 92 motion Filing fee: $ 75.00, receipt number 4602057512 (djy, ) (Entered: 04/07/2020) |
| 04/07/2020 | 128 | | Received Pro Hac Vice for Joseph St. John re: 92 motion Filing fee: $ 75.00, receipt number 4602057511. (djy, ) (Entered: 04/07/2020) |
| 04/07/2020 | 129 | | NOTICE by Scott Harris, Steven Marshall re 73 Emergency MOTION for Temporary Restraining Order *(requesting immediate action)* MOTION for Preliminary Injunction *Notice of Supplemental Authority* (Attachments: # 1 Exhibit Supplemental Authority (In re Abbott Case no. 20−50264 (5th Cir. Apr. 27, 2020)))(Davis, James) (Entered: 04/07/2020) |
| 04/07/2020 | 130 | | USCA Appeal Fees received $ 505 receipt number 4602057586 re 94 Notice of Appeal filed by Scott Harris, Steven Marshall, 11th Circuit Appeal No. 20−11270−B. (dmn, ) (Entered: 04/07/2020) |
| 04/08/2020 | 131 | | NOTICE by Scott Harris, Steven Marshall *Notice of Filing of Proposed Order* (Attachments: # 1 Text of Proposed Order)(Davis, James) (Entered: 04/08/2020) |
| 04/08/2020 | 132 | | Proposed (Opinion) Findings of Fact by Alabama Women's Center, Reproductive Health Services, Yashica Robinson, West Alabama Women's Center. (Marshall, Randall) Modified on 4/9/2020 to clarify text to reflect as proposed opinion (qc/djy, ). (Entered: 04/08/2020) |
| 04/08/2020 | 133 | | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Evidentiary Hearing Proceedings via Video Conference (PDF ACCESS RESTRICTED FOR 90 DAYS) held on April 6, 2020, before Judge Thompson. Court Reporter/Transcriber Starkie, Telephone number 334−262−1221. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 4/29/2020. Redacted Transcript Deadline set for 5/11/2020. Release of Transcript Restriction set for 7/7/2020. (djy, ) (Entered: 04/08/2020) |
| 04/10/2020 | 134 | | **TEXT ORDER granting 126 Motion for Extension of Time and extending the deadline to respond to the First Amended Complaint to 4/27/2020. Signed by Honorable Judge Myron H. Thompson on 4/10/2020. (NO PDF** |

| | | | |
|---|---|---|---|
| | | | Document attached to this notice). (djy, ) (Entered: 04/10/2020) |
| 04/11/2020 | 135 | | ORDER granting 92 Motion for Joseph Scott St. John and Elizabeth Baker Murrill Leave to Appear Pro Hac Vice. Signed by Honorable Judge Myron H. Thompson on 4/11/2020. (djy, ) (Entered: 04/11/2020) |
| 04/11/2020 | 136 | | ORDER granting 80 Motion for Leave to File amicus brief. Signed by Honorable Judge Myron H. Thompson on 4/11/2020. (djy, ) (Entered: 04/11/2020) |
| 04/12/2020 | 137 | 36 | OPINION. Signed by Honorable Judge Myron H. Thompson on 4/12/2020. (djy, ) (Entered: 04/12/2020) |
| 04/12/2020 | 138 | 28 | PRELIMINARY INJUNCTION, in accordance with the opinion entered today, it is ORDERED as follows: (1) The 73 motion for a preliminary injunction filed by the plfs, is granted in part, denied in part, and held in abeyance in part, as set forth in further detail below; (2) The motion is denied to the extent that it seeks a blanket injunction blocking all enforcement of the "medical restrictions" in the State Health Officer's 3/27/2020, and 4/3/2020, state health orders against the plfs and their staff (or of any future order extending the application of the "medical restrictions"). "Medical restrictions" refers to paragraph 7 of the March 27 order and paragraph 14 of the April 3 order and to any identical language in any subsequently issued state health order. (3) The motion is granted to the following extent. The defendants Alabama State Health Officer and Alabama Attorney General, and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the aforementioned individuals, are each PRELIMINARILY ENJOINED and RESTRAINED from, when applying and enforcing the "medical restrictions," whether through Ala. Code 1975 22−2−14 or other mechanisms, failing to allow healthcare providers who are determining whether to postpone abortions to consider and to base their decisions on the following factors, using the providers' reasonable medical judgment exercised on a case−by−case, individualized basis, as further set out in order; (4) The preliminary injunction shall remain in effect until further order of the court; (5) In light of the temporary restraining order issued in S. Wind Women's Ctr. LLC v. Stitt, No. CIV−20−277−G, 2020 WL 1677094 (W.D. Okla. Apr. 6, 2020) (Goodwin, J.), the motion is held in abeyance to the extent it seeks relief prohibiting application to all medication abortions of the medical restrictions of the State Health Officer's 3/27/2020 and 4/3/2020 state health orders (and to any future orders extending the application of the medical restrictions). The court will further consider whether relief is appropriate on this issue; (6) The bond requirement of Fed. R. Civ. P. 65(c) is waived. Signed by Honorable Judge Myron H. Thompson on 4/12/2020. (Attachments: # 1 civil appeals checklist)(djy, ) (Entered: 04/12/2020) |
| 04/13/2020 | 139 | 26 | NOTICE OF APPEAL by Scott Harris, Steven Marshall as to 138 Preliminary Injunction, 137 Opinion entered 4/12/2020. (Davis, James) Modified on 4/13/2020 to clean up text. (dmn, ) (Entered: 04/13/2020) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| YASHICA ROBINSON, *et al.* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )      **CASE NO. 2:19-cv-00365-MHT-JTA** |
| | ) |
| STEVEN MARSHALL, in his | ) |
| official capacity as Attorney General of | ) |
| the State of Alabama, *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

**NOTICE OF APPEAL OF PRELIMINARY INJUNCTION (Docs. 137 and 138)**
**OF DEFENDANTS ATTORNEY GENERAL STEVE MARSHALL AND**
**STATE HEALTH OFFICER DR. SCOTT HARRIS**

Notice is hereby given that Steve Marshall, sued in his official capacity as Alabama Attorney General, and Dr. Scott Harris, sued in his official capacity as State Health Officer, Defendants in the above named case, hereby appeal to the United States Court of Appeals for the Eleventh Circuit from a Preliminary Injunction entered in this action on April 12, 2020 (docs. 137-138).

Respectfully submitted,

Steve Marshall,
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*
A. Barrett Bowdre (ASB-2087-K29V)
  *Deputy Solicitor General*

/s James W. Davis
James W. Davis (ASB-4063-I58J)
Brad A. Chynoweth (ASB-0030-S63K)
Brenton M. Smith (ASB-1656-X27Q)
  *Assistant Attorneys General*

1

OFFICE OF ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Brad.Chynoweth@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

***Counsel for Defendants Steve Marshall and State Health Officer Scott Harris***

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/* James W. Davis
Counsel for Defendants Steve
Marshall and State Health Officer
Scott Harris

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
YASHICA ROBINSON, M.D.,      )
et al., on behalf of         )
themselves, their            )
patients, physicians,        )
clinic administrators,       )
and staff,                   )
                             )
     Plaintiffs,             )
                             )        CIVIL ACTION NO.
     v.                      )        2:19cv365-MHT
                             )             (WO)
STEVEN MARSHALL, in his      )
official capacity as         )
Alabama Attorney General,    )
et al.,                      )
                             )
     Defendants.             )
```

PRELIMINARY INJUNCTION

In accordance with the opinion entered today, it is

ORDERED as follows:

(1) The motion for a preliminary injunction (doc.

no. 73) filed by the plaintiffs, Yashica Robinson,

M.D., Alabama Women's Center, Planned Parenthood

Southeast Inc., Reproductive Health Services, and West

Alabama Women's Center is granted in part, denied in

part, and held in abeyance in part, as set forth in further detail below.

(2) The motion is denied to the extent that it seeks a blanket injunction blocking *all* enforcement of the "medical restrictions" in the State Health Officer's March 27, 2020, and April 3, 2020, state health orders against the plaintiffs and their staff (or of any future order extending the application of the "medical restrictions"). "Medical restrictions" refers to paragraph 7 of the March 27 order and paragraph 14 of the April 3 order and to any identical language in any subsequently issued state health order.

(3) The motion is granted to the following extent. The defendants Alabama State Health Officer and Alabama Attorney General, and their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the aforementioned individuals, are each PRELIMINARILY ENJOINED and RESTRAINED from, when applying and

2

enforcing the "medical restrictions," whether through Ala. Code 1975 § 22-2-14 or other mechanisms, failing to allow healthcare providers who are determining whether to postpone abortions to consider and to base their decisions on the following factors, using the providers' reasonable medical judgment exercised on a case-by-case, individualized basis:

(a) Whether under 1975 Ala. Code § 26-23B-5, a patient would lose her legal right to obtain an abortion if the procedure were delayed until after April 30, 2020 (or, if a new order is entered extending the application of the medical restrictions, if delayed until after the end date of that future state health order);

(b) The timing of the patient's last menstrual period, as determined by the healthcare provider;

(c) Gestational age of the fetus, as determined by the healthcare provider;

3

(d) The increase in risk to the life or health of the patient if the abortion is delayed;

(e) The increase in risk of serious complications if the abortion is delayed;

(f) Economic factors that may impact the patient's ability to obtain an abortion if the abortion is delayed;

(g) Social factors that may impact the patient's ability to obtain an abortion if the abortion is delayed;

(h) Logistical factors that may impact the patient's ability to obtain an abortion if the abortion is delayed; and

(i) Medical history and conditions of the patient.

(4) The preliminary injunction shall remain in effect until further order of the court.

(5) In light of the temporary restraining order issued in *S. Wind Women's Ctr. LLC v. Stitt*, No.

4

CIV-20-277-G, 2020 WL 1677094 (W.D. Okla. Apr. 6, 2020) (Goodwin, J.), the motion is held in abeyance to the extent it seeks relief prohibiting application to *all* medication abortions of the medical restrictions of the State Health Officer's March 27, 2020 and April 3, 2020 state health orders (and to any future orders extending the application of the medical restrictions). The court will further consider whether relief is appropriate on this issue.

(6) The bond requirement of Fed. R. Civ. P. 65(c) is waived.

DONE, this the 12th day of April, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on December 1, 2013, the fee to file an appeal is $505.00

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. § 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983) (citing *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(b); *Perez-Priego v. Alachua County Clerk of Court*, 148 F.3d 1272 (11th Cir. 1998). However, under 28 U.S.C. § 636(c)(3), the Courts of Appeals have jurisdiction over an appeal from a final judgment entered by a magistrate judge, but only if the parties consented to the magistrate's jurisdiction. *McNab v. J & J Marine, Inc.*, 240 F.3d 1326, 1327-28 (11th Cir. 2001).

    (b)  **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). *Williams v. Bishop*, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 201, 108 S.Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Under this section, appeals are permitted from the following types of orders:
        i.   Orders granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions; However, interlocutory appeals from orders denying temporary restraining orders are not permitted. *McDougald v. Jenson*, 786 F.2d 1465, 1472-73 (11th Cir. 1986);
        ii.  Orders appointing receivers or refusing to wind up receiverships; and
        iii. Orders determining the rights and liabilities of parties in admiralty cases.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5:** The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93

L.Ed. 1528 (1949); *Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.*, 890 F.2d 371, 376 (11th Cir. 1989); *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. *Rinaldo v. Corbett*, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the order or judgment appealed from is entered. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend or reopen the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time to file an appeal may be reopened if the district court finds, upon motion, that the following conditions are satisfied: the moving party did not receive notice of the entry of the judgment or order within 21 days after entry; the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice, whichever is earlier; and no party would be prejudiced by the reopening.

(e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Rev.: 3/2011

3.  **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format.  *See also* Fed.R.App.P. 3(c).  A *pro se* notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court lacks jurisdiction, *i.e.*, authority, to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

Rev.: 3/2011

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
YASHICA ROBINSON, M.D.,      )
et al., on behalf of         )
themselves, their            )
patients, physicians,        )
clinic administrators,       )
and staff,                   )
                             )
      Plaintiffs,            )
                             )        CIVIL ACTION NO.
      v.                     )         2:19cv365-MHT
                             )            (WO)
STEVEN MARSHALL, in his      )
official capacity as         )
Alabama Attorney General,    )
et al.,                      )
                             )
      Defendants.            )
```

OPINION

In December 2019, a novel coronavirus, which causes the disease now known as COVID-19, began to spread quickly around the world. On March 13, 2020, the President of the United States and the Governor of the State of Alabama declared the COVID-19 outbreak both a national and state emergency. Following these declarations, Alabama's State Health Officer issued a series of orders suspending certain public gatherings.

One of these orders, published on March 27, mandated the postponement of "all dental, medical, or surgical procedures," with two exceptions: (a) those "necessary to treat an emergency medical condition" and (b) those "necessary to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment." State Health Order of March 27, 2020 (doc. no. 88-1) at 6 ¶ 7.

Plaintiffs Yashica Robinson, M.D., Alabama Women's Center, Reproductive Health Services, and West Alabama Women's Center are abortion providers in Alabama. They seek in this ongoing litigation to enjoin enforcement against them of the State Health Officer's March 27 "Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19," extended (with identical language as relevant here) on April 3.[1]  *See* State Health Order of April 3, 2020 (doc.

---

1.  This ongoing litigation was initiated in May 2019 to challenge an Alabama statute that imposed criminal liability on abortion providers for nearly all abortions, completed or attempted, regardless of fetal viability.

2

no. 109-1).   The defendants are Steven Marshall, the

Attorney General, and Dr. Scott Harris, the State Health

Officer.[2]

     For the reasons described below, the plaintiffs'

motion for a preliminary injunction will be granted in

_See Robinson v. Marshall_, 415 F. Supp. 3d 1053 (M.D. Ala.
2019) (Thompson, J.).   Because the statute contravened
clear Supreme Court precedent, the court preliminarily
enjoined enforcement of the statute as applied to
pre-viability abortion.   _See id._   On March 30, 2020, the
plaintiffs then moved to supplement their complaint to
challenge the March 27 state health order, and the court
granted the motion.

     2.   Additional defendants are the district attorneys
of the four counties where the plaintiff clinics are
located, the Chairman of the Alabama Board of Medical
Examiners, and the Chairman of the Medical Licensure
Commission of Alabama.   _See_ First Amended Complaint (doc.
no. 79) at 8-12 ¶¶ 20-28.   These defendants were named
in the original complaint in this case, _see_ Complaint
(doc. no. 1) at ¶¶ 18-25, but were voluntarily dismissed
without prejudice after they agreed to abide by any
relief issued by the court as to the statute originally
challenged. _See_ Orders (doc. nos. 44, 49).   They were
were added back in as parties in the amended complaint,
_see_ First Amended Complaint (doc. no. 79) at 8-12
¶¶ 20-28, but have not  appeared or participated in this
phase of the litigation.   When the court refers to the
defendants in this opinion, the court is referring to
only Steven Marshall, the Attorney General, and Dr. Scott
Harris, the State Health Officer.

part, denied in part, and held in abeyance in part.[3]

## I.  BACKGROUND

In light of the ongoing COVID-19 emergency, Alabama's State Health Officer, Dr. Scott Harris, has issued a series of state health orders suspending certain public gatherings and placing limits on the performance of many medical "procedures."  How the restrictions on medical procedures apply to abortion was not immediately clear. In part because abortion providers in Alabama operate in an atmosphere of hostility, the plaintiffs sought clarification of whether the restrictions allow the continued performance of abortions.  Repeated efforts to

---

3. In light of the temporary restraining order issued in *S. Wind Women's Ctr. LLC v. Stitt*, No. CIV-20-277-G, 2020 WL 1677094 (W.D. Okla. Apr. 6, 2020) (Goodwin, J.), the motion for a preliminary injunction is held in abeyance to the extent that it seeks relief prohibiting application to *all* medication abortions of the medical restrictions of the State Health Officer's March 27, 2020 and April 3, 2020 state health orders (and to any future orders extending the application of the medical restrictions).  The court will further consider whether relief is appropriate on this issue.

4

clarify the application of the medical restrictions to abortion, including by the plaintiffs and by this court, have yielded multiple inconsistent interpretations put forth by the defendants and their attorneys.

The initial state health order, entered on March 19, 2020, delayed "all elective dental and medical procedures." State Health Order of March 19, 2020 (doc. no. 88-4) at 4 ¶ 6. On March 20, an assistant general counsel for the Alabama Department of Public Health confirmed to the plaintiffs' counsel that the department "ha[d] no plans to apply the order to the [abortion] clinics." Decl. of Pls.' Counsel (doc. no. 73) at 46 ¶ 4.

However, on March 27, the State Health Officer amended the restriction on medical procedures in the March 19 state health order, postponing "all dental, medical, or surgical procedures," with two exceptions: (a) those "necessary to treat an emergency medical condition" and (b) those "necessary to avoid serious harm from an underlying condition or disease, or necessary as

5

part of a patient's ongoing and active treatment."  State
Health Order of March 27, 2020 (doc. no. 88-1) at 6 ¶ 7.

Counsel for the plaintiffs reached out again to the
Alabama Department of Public Health, seeking to confirm
that the March 27 state health order would still not be
applied to the clinics.  *See* Decl. of Pls.' Counsel (doc.
no. 73) at 47 ¶ 9-10.  As the plaintiffs interpreted the
state health order, "medication abortion is not a
procedure within the terms of the order and ... surgical
abortion procedures fall within the exceptions."  *Id.* at
47 ¶ 10.  On March 29, the chief counsel to the attorney
general stated in response to the questions from the
plaintiffs' counsel that "we are unable to provide ... a
blanket affirmation that abortions will, in every case,
fall within one of the exemptions."  *Id.* at 48 ¶ 14.  In
other words, under this interpretation, the restrictions
on medical procedures may prohibit some abortions.  Given
this, the plaintiffs filed both a motion to file a
supplemental complaint and a motion for a temporary
restraining order and preliminary injunction, seeking to

6

immediately enjoin enforcement of the March 27 order
against abortion providers and abortion clinics.

During an emergency on-the-record hearing on March
30, this court asked counsel for the defendants whether
the State Health Officer had taken a position
interpreting the revised March 27 state health order.
*See* March 30, 2020, Hr'g Tr. (doc. no. 98) at 5:23-25,
21:17-22:1. Counsel for defendants represented that the
State Health Officer had taken a position and had
communicated that position to counsel's office. *See id.*
at 6:1-7, 20:4-8, 22:2-5. Counsel explained that, per
the State Health Officer's own interpretation, the March
27 state health order *did* apply to abortions and that
abortions would only meet the exceptions where required
to protect the life and health of the mother. *See id.*
at 20:22-21:1, 22:6-10. In response to these
representations, the court entered a broad temporary
restraining order enjoining the application of the March
27 state health order against abortion providers and
abortion clinics because the state health order, as so

7

described by defense counsel, operated as a prohibition
on abortion during the pendency of the order. *See
Robinson v. Marshall*, 2020 WL 1520243 (M.D. Ala. 2020)
(Thompson, J.), *amended by Robinson v. Marshall*, 2020 WL
1659700 (M.D. Ala. 2020), *and appeal dismissed*, No.20-
cv-11270-B (11th Cir. 2020).

As requested, the court gave the defendants 48 hours
to respond to the plaintiffs' motion for a preliminary
injunction and indicated that, upon receipt of the
defendants' response, the court would immediately
reconsider its decision. The court set the motion for a
preliminarily injunction for a fast-track hearing a week
later, on April 6.

Late in the day on April 1, before this court could
hold a preliminary injunction hearing, the defendants
filed a motion to dissolve the temporary restraining
order and a motion to stay enforcement of that order
pending appeal. In their briefs, the defendants advanced
a new interpretation of the March 27 state health order.
The defendants explained in a footnote that they actually

8

"did not mean to suggest that [protecting the life or health of the mother] are the only circumstances where an abortion would fit within one of the two exceptions" in the March 27 order. Defs.' Br. in Support of Mot. to Dissolve (doc. no. 89) at 26 n.30. Instead, the defendants indicated, this was just one example of a range of exceptions, though they did not affirmatively provide any other examples of how the exceptions would permit an abortion to proceed. *See id*. In an accompanying declaration, Dr. Scott Harris, the State Health Officer, explained that while "abortions constitute 'procedures'" under the order and that "no particular type of ... procedure categorically fits within one of the two exceptions," the determination of whether an exception applies "should be made by a doctor using reasonable medical judgment based upon his or her patient's individual circumstances." Decl. of State Health Officer (doc. no. 88-15) at 6 ¶¶ 22-23. But Dr. Harris still did not explain how the restrictions on medical procedures and associated exceptions in the March

9

27 order applied to abortions.  The plaintiffs and the court were still in the dark on this point.

The court held an immediate hearing on April 3 to discuss, among other things, the defendants' revision in their April 1 brief (allowable abortions *not* limited to protecting the life or health of the mother) of their prior interpretation in the March 30 hearing (abortions limited to protecting the life or health of the mother), both of which, according to defense counsel, were made after talking with State Health Officer Harris.  *See* March 30, 2020, Hr'g Tr. (doc. no. 98) at 6:1-7, 20:4-8, 22:2-5; April 3, 2020, Hr'g Tr. (doc. no. 123) at 35:9-13, 37:13-14.  During the April 3 hearing, the court understood the defendants to make four critical clarifications of the scope of the restrictions on medical procedures and its exceptions.  These clarifications, however, were not in the March 27 state health order, the defendants' brief, or Dr. Harris's declaration.  As a result, the court reduced the defendants' four April 3 clarifications to writing.

10

- First, "[i]n general, for an abortion, like any other procedure, a doctor should examine his or her patient, consider all circumstances, and determine whether one of the exceptions to the March 27 order applies. If they do, the procedure can go forward." *Robinson v. Marshall*, 2020 WL 1659700, at *3 (M.D. Ala. Apr. 3, 2020) (internal quotation marks, alteration, and citation omitted).

- Second, "if a healthcare provider determines, on a case-by-case basis in his or her reasonable medical judgment, that a patient will lose her right to lawfully seek an abortion in Alabama based on the March 27 order's mandatory delays ... then the abortion may be performed without delay pursuant to the exceptions in the March 27 order. The provider may examine his or her patient as needed to make the necessary determination regarding the age of the fetus." *Id.* (internal citation omitted).

- Third, "[i]f a healthcare provider determines, again

11

on a case-by-case basis in his or her reasonable medical judgment, that the abortion cannot be delayed in a healthy way, then the abortion may be performed without delay pursuant to the exceptions in the March 27 order." *Id.* (internal quotation marks, alteration, and citation omitted). "[A] healthcare provider may also examine his or her patient to assess whether or not an abortion can be delayed for two weeks in a healthy way...." *Id.* (internal quotation marks omitted).

- Fourth, and finally, "[t]he reasonable medical judgment of abortion providers will be treated with the same respect and deference as the judgments of other medical providers. The decisions will not be singled out for adverse consequences because the services in question are abortions or abortion-related." *Id.* (internal citation omitted).

Based largely upon these clarifications, the court found that its initial March 30 temporary restraining order "swept too broadly," as the April 3 clarifications

12

"alleviated the court's most serious concerns underlying the issuance of its temporary restraining order." *Id.* The court thus narrowed its temporary restraining order by granting the defendants' motion to stay "to the extent that the court adopts as its order the clarifications agreed upon by the defendants." *Id.* at *4. The court did not stay the temporary restraining order in full because the defendants' clarifications of the state health order were not otherwise binding.[4]

Also on April 3, in the midst of the court's resolution of the motion to stay, the State Health Officer issued a new state health order that extended the relevant restrictions on medical procedures until April

---

4. The court did not act on the motion to dissolve the temporary restraining order because it lacked jurisdiction to do so, given that the defendants had filed an appeal from the temporary restraining order to the Eleventh Circuit Court of Appeals. *See* Notice of Appeal (doc. no. 94); *see also Robinson v. Marshall*, 2020 WL 1659700, at *1 (M.D. Ala. 2020) (Thompson, J.). The appeal was later dismissed on April 4 pursuant to the parties' joint motion. *See* Letter from David J. Smith, Clerk of Eleventh Circuit Court of Appeals, to Clerk, Middle District of Alabama (doc. no. 122).

13

30.  *See* State Health Order of April 3, 2020 (doc. no. 109-1).  The restrictions on medical procedures in the March 27 order are identical to the restrictions in the April 3 order.  As a result, the defendants agreed that "to the extent that any provider could lawfully have considered the April 17 expiration date from the March 27 order, that provider can instead consider the new expiration date of April 30, 2020."  Order (doc. no. 113) at 2.

On April 5, counsel for the defendants submitted three additional written clarifications to the court's understanding of their April 3 oral clarifications.  *See* Defs.' Notice (doc. no. 120).

- First, the defendants additionally clarified that "a healthcare provider's assertion that a procedure meets one of the exceptions is not conclusive proof that the procedure meets one of the exceptions."  *Id.* at 2.

- Second, the defendants additionally clarified that "any healthcare provider would still need to make an

14

individualized determination for his or her patient
as to whether losing the ability to have a procedure
performed would cause serious harm to the patient."
*Id.* at 3.

- Third, the defendants additionally clarified that
"the exceptions require that the risk to a patient's
health be sufficiently serious." *Id.* at 3 (internal
quotation marks, alteration, and citation omitted).

During the April 6 preliminary injunction hearing,
however, the State Health Officer, Dr. Scott Harris, put
forth yet another interpretation of the restrictions on
medical procedures. First, although the March 19 and
March 27 state health orders had been interpreted
differently, *see* Decl. of Pls.' Counsel (doc. no. 73) at
46 ¶ 4 ("no plans to apply" March 19 order to abortion
clinics); *id.* at 48 ¶ 14 ("unable to provide ... blanket
affirmation that abortions will, in every case, fall
within one of the exemptions" to the March 27 order), Dr.
Harris explained that he meant for the two orders "to
have the same effect." April 6, 2020, Hr'g Tr. (doc. no.

15

133) at 12:17. Second, just as the determination of whether a particular procedure was elective or not in the March 19 order was "left ... to the discretion of the provider," *id*. at 11:8, for the current restrictions on medical procedures "[t]he providers are the ones who determine whether their procedure fits in those exceptions, not the health department." *Id*. at 49:19-21. Third, a provider can consider "whatever factors they would deem ... appropriate" when making a determination of whether the exceptions in a particular circumstance have been satisfied. *Id*. at 15:25-16:8. Fourth, the Department of Public Health does not intend for an abortion provider to necessarily delay even a single procedure as a result of the restrictions on medical procedures. *See id*. at 50:5-14. Fifth, and finally, the Department does not intend to review healthcare providers' decisions. *See id*. at 44:3-14.

To the extent that Dr. Harris's April 6 testimony represents the current interpretation of the restrictions on medical procedures, it reveals substantial common

16

ground between the two parties.   Dr. Harris, for
instance, made clear that the order was never intended
to establish a blanket ban on abortions, but rather that
the order contemplated "case-by-case determination[s]."
*Id.* at 18:1-8.   Dr. Harris further emphasized that
providers, and not the Alabama Department of Health,
should decide which factors to consider in deciding
whether the order's exceptions apply. *See id.* at 13:18-
21, 15:3-16:8.  And Dr. Robinson, one of the plaintiffs
in this litigation and the medical director of the
plaintiff Alabama Women's Center, agreed that providers
could delay abortions under certain circumstances. *See,
e.g., id.* at 139:20-23 (for patients presenting with
COVID-19 symptoms); *id.* at 155:8-10 (acknowledging
possibility that at least one abortion could be safely
postponed).

Nonetheless, Dr. Robinson testified that the
defendants' additional written clarifications on April 5
to the court's understanding of their representations on
April 3, caused her serious concern.  According to her,

17

the written clarifications "made it very clear to me that my medical judgment was not the final decision when it came to the care decisions that I was making for my patients. I don't know who that is going to be left up to, but it made it very clear to me ... that [my medical judgment] would not be the final call." *Id.* at 125:7-13.

With all of these varying interpretations of the State's public health orders in mind, including the interpretations provided to the plaintiffs' counsel before the filing of the motion for temporary restraining order, the court now turns to the plaintiffs' motion for a preliminary injunction.

## II. LEGAL STANDARDS

For a preliminary injunction to issue, the plaintiffs must establish the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to the plaintiffs outweighs the threatened harm that the

18

injunction may cause the defendants; and (4) that granting preliminary injunctive relief is not adverse to the public interest. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991); *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983). Further, where a court issues an injunction, "invalidating the statute entirely is not always necessary or justified;" rather, courts "may be able to render narrower declaratory and injunctive relief." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 323 (2006).

### III. DISCUSSION

### A. Likelihood of Success on the Merits

On March 27, 2020, the State Health Officer released an order that mandated the postponement of "all dental, medical, or surgical procedures," with two exceptions: (a) those "necessary to treat an emergency medical condition" and (b) those "necessary to avoid serious harm from an underlying condition or disease, or necessary as

19

part of a patient's ongoing and active treatment." State Health Order of March 27, 2020 (doc. no. 88-1) at 6 ¶ 7. On April 3, the State Health Officer entered a new order with identical medical restrictions that extended their expiration date from April 17 to April 30. *See* State Health Order of April 3, 2020 (doc. no. 109-1). As described above, these medical restrictions are susceptible to multiple readings. Over the course of this litigation, the defendants themselves have put forth several divergent interpretations of the medical restrictions, each with dramatically different implications for the plaintiffs.

Under one of the interpretations put forth by the defendants, for all of April, abortions can lawfully proceed without delay *only* when necessary to protect maternal life or maternal health. Based on the record that is now before the court, the medical restrictions, read pursuant to this interpretation, violate the Fourteenth Amendment. The court has no enforceable guarantee that the medical restrictions will *not* be

20

interpreted in this way by those tasked with their enforcement through 1975 Ala. Code § 22-2-14 or other mechanisms. *See* April 6, 2020, Hr'g Tr. (doc. no. 133) at 44:15-25 (Dr. Harris disclaiming knowledge of how the order might be enforced by others). The plaintiffs and the court also cannot rely on the defendants' non-binding assurances that they will not return to this interpretation. Accordingly, as explained below, the court finds that the plaintiffs have demonstrated a substantial likelihood of success on the merits.

### 1. Effects of Mandatory Postponement

On March 30, counsel for the defendants represented that, under the medical restrictions, abortions could lawfully proceed without delay only if they were necessary to protect the life and health of the mother. *See* March 30, 2020, Hr'g Tr. (doc. no. 98) at 20:22-21:1, 22:6-10. Under this reading, the medical restrictions would mandate the postponement until at least April 30 of all abortions not performed to protect maternal life

21

or maternal health.[5]

On the limited record before the court, the precise implications of the medical restrictions, interpreted in this way, remain murky.  The COVID-19 crisis leaves the court and the parties in uncharted territory.  But this much is clear: for at least some women,[6] a mandatory postponement until April 30 would operate as a

---

5. This reading by the defendants is a plausible one. The restrictions allow medical procedures only when "necessary to treat an emergency medical condition" or "to avoid serious harm from an underlying condition or disease."  State Health Order of March 27, 2020 (doc. no. 88-1) at 6 ¶ 7.  While there are other plausible interpretations, the exception *can* be read to mandate postponement of any abortion not necessary to protect the life or health of the mother.  And while the medical restrictions also allow for procedures that are "necessary as part of a patient's ongoing and active treatment," *id.*, the meaning of this provision, and whether and how it applies to abortion, is far from clear.

6. Dr. Robinson acknowledged that, at least hypothetically, it was "possible for there to be at least one abortion that can be safely postponed in [her] judgment."  April 6, 2020, Hr'g Tr. (doc. no. 133) at 155:8-10.  But "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects.... The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant."  *Casey*, 505 U.S. at 894.

22

*prohibition* of abortion, entirely nullifying their right
to terminate their pregnancies, or would impose a
substantial burden on their ability to access an
abortion. The court provides examples here, though it
cautions that the groups described do not constitute an
exhaustive accounting of the medical restrictions' likely
effects.

First, for some group of women, a mandatory
postponement will make a lawful abortion literally
impossible. Under Alabama law, a woman's window for
seeking a lawful abortion is limited: abortion becomes
illegal when the probable postfertilization age of the
fetus is at least 20 weeks. *See* 1975 Ala. Code, as
amended, § 26-23B-5. A mandatory postponement until
April 30 could thus extend a woman's pregnancy beyond the
20-week boundary imposed by law, making an abortion
illegal. *See id.*; *see also* Pls.' Mem. in Supp. of a
T.R.O. (doc. no. 73-1) at 2 (describing a woman who would
be "pushed past the legal limit for abortion in Alabama
if she does not obtain an abortion *this week*").

23

For other women, a postponement would make securing a lawful abortion far more difficult, or even impossible, including because of major logistical hurdles. Take, for instance, abortions performed after 14 weeks. Only one clinic in Alabama can perform such abortions, *see* April 6, 2020, Hr'g Tr. (doc. no. 133) at 78:4-9, which are normally a very small minority of all abortions performed statewide. *See* Induced Termination of Pregnancy Statistics (doc. no. 88-13) at 10. But if widespread delays to abortions occur, that clinic's limited capacity will likely become a serious barrier that renders lawful abortions entirely unavailable to some women in Alabama. *See* April 6, 2020, Hr'g Tr. (doc. no. 133) at 114:7-116:1. Women in Alabama might also face difficulty traveling to a clinic, *see id.* at 92:16-19, particularly if they live in the far reaches of the State; receiving necessary time off, *see id.* at 92:11-15, or child care, *see id.* at 92:24-93:1; and affording an abortion in the first place, *see id.* at 92:5-10. (In Alabama, an abortion requires two visits, so these obstacles must be navigated

24

twice. *See, e.g., id.* at 93:2-6.)   A mandatory delay would greatly exacerbate many of these difficulties, unseating plans in the midst of a pandemic that has yielded widespread job loss, financial difficulty, and social isolation.   *See, e.g., id.* at 113:11-13 (Dr. Robinson noting that "[w]ith each week that the pregnancy is delayed or termination of the pregnancy is delayed, that means there is an increased cost to the patient"); *id.* at 93:7-14 (noting the pandemic's impact on women seeking abortions, apart from the medical restrictions).[7] It is abundantly clear, and the court now finds, that a delay until April 30 will pose a tremendous, and sometimes insurmountable, burden for many women in Alabama.

Further, for some women, a postponement of an abortion may cause serious harm, or a substantial risk of serious harm, to that woman's health.   Dr. Robinson

---

7. The court finds that Dr. Robinson is an expert in obstetrics and gynecology and abortion practice. *See* April 6, 2020, Hr'g Tr. (doc. no. 133) at 72:21-24.

25

credibly testified that, for at least some women, even a
short delay can make an abortion (or the ongoing
pregnancy) substantially riskier. *See, e.g.*, April 6,
2020, Hr'g Tr. (doc. no. 133) at 160:11-13 (discussing
the increase in risk to patients as time passes); *id.* at
84:10-21 (discussing conditions associated with
pregnancy); *id.* at 111:16-18 (noting that "each week that
the abortion is delayed, it increases the risk to the
patient"); *id.* at 112:18-24 (discussing risks of delay
for women at risk of domestic violence or who have
experienced rape); *id.* at 111:4-6 (noting that each week
of delay "increases the risk of mortality"); *id.* at
107:2-11 (reading from a report concluding that, while
complications are rare, the risk of serious complications
increases with delay[8]); *id.* at 110:2-5 (summarizing a

---

8. Dr. Robinson read from a report admissible as a
learned treatise. *See* Committee on Reproductive Health
Services: Assessing the Safety and Quality of Abortion
Care in the U.S., National Academies of Sciences,
Engineering, and Medicine, *The Safety and Quality of
Abortion Care in the United States* (2018); *see also* Fed.
R. Evid. 803(18).

26

report concluding that "every week an abortion is delayed increases the risk [of mortality or death in the patient] by approximately 38 percent"[9]); *see generally id.* at 39:17-40:4 (Dr. Harris agreeing regarding Alabama's high rate of childbirth complications and maternal mortality). Abortion is a "very safe" procedure, *id.* at 110:24-25, but, for some patients, the relative risk can dramatically increase in a short time--and for these patients, a mandatory delay would create a substantial and serious risk of harm for many patients.


2. The Medical Restrictions' Constitutionality

The court finds that, in light of these effects, the plaintiffs have shown a substantial likelihood of success on the merits. That is, it is substantially likely that the medical restrictions, when interpreted to allow only

---

9. Here, Dr. Robinson was summarizing a section of a learned treatise. *See* Linda A. Bartlett, *Risk Factors for Legal Induced Abortion-Related Mortality in the United States*, 103 Obstetrics & Gynecology 729, 731, 735 (2004); *see also* Fed. R. Evid. 803(18).

27

those abortions necessary to protect the life and health of the mother, are unconstitutional.  First, to the extent that they are interpreted to *prohibit* certain women from *ever* obtaining a pre-viability abortion--and force them, instead, to carry their pregnancies to term--the medical restrictions are very likely unconstitutional on the record before the court.  And, second, to the extent that they impose substantial burdens upon or create serious and substantial health risks for women seeking abortions, they very likely pose an unconstitutional burden.

The plaintiffs and the defendants posit two distinct legal frameworks for this case.  The plaintiffs suggest that the substantive-due-process analysis of *Roe v. Wade*, 410 U.S. 113 (1973), *Planned Parenthood of Southeast Pennsylvania v. Casey*, 505 U.S. 833 (1992), and other related cases should govern.  The defendants argue that the court should instead turn to the State's emergency powers, as set forth in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), in reviewing the

28

order.   The court need not decide which legal framework
applies, and instead assumes that they can and should be
applied together in these circumstances.   Under either
framework,  the  plaintiffs  have  shown  a  substantial
likelihood that, if read to effect a postponement of any
abortion not required to protect the life and health of
the    mother,    the    medical    restrictions    are
unconstitutional.

In *Jacobson*, amid a smallpox outbreak in Cambridge,
Massachusetts,  the  City  (acting  pursuant  to  a  state
statute) mandated the vaccination of all of its citizens.
The  Court  upheld  the  statute  against  a  Fourteenth
Amendment challenge, clarifying that the State's action
was a lawful exercise of its police powers and noting
that, "[u]pon the principle of self-defense, of paramount
necessity,  a  community  has  the  right  to  protect  itself
against an epidemic of disease which threatens the safety
of its members."  *Id.* at 27.   Still, while *Jacobson* urges
deferential  review  in  times  of  emergency,  it  clearly
demands that courts enforce the Constitution.   *See id* at

29

28.  Indeed, *Jacobson* explicitly contemplates a backstop role for the judiciary: "[I]f a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, *a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.*" *Id.* at 30 (emphasis added); *see also Casey*, 505 U.S. at 857 (citing *Jacobson* for the proposition that "a State's interest in the protection of life falls short of justifying any plenary override of individual liberty claims").

Under *Jacobson*, therefore, a State's emergency response can still be unlawful if it impinges on a fundamental right in a "plain, palpable" way. *Jacobson*, 197 U.S. at 31.[10]  Abortion is a fundamental right.  *See,*

---

10.  The *Jacobson* Court--writing long before the development of modern substantive-due-process jurisprudence--found no clear invasion of any fundamental right.  "Whatever may be thought of the expediency of

30

*e.g., Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005) (noting that "[t]he Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain 'liberty' and privacy interests," which include the right "to abortion" (internal citation marks omitted)). And so *Jacobson* asks courts to protect it, even in times of emergency.

Here, the contours of the fundamental right at stake are described in *Roe*, *Casey*, and subsequent cases. As the Supreme Court has repeatedly re-affirmed, the Fourteenth Amendment protects a woman's right to terminate her pregnancy. *See, e.g., Stenberg v. Carhart*, 530 U.S. 914, 921 (2000) (noting that the Supreme Court "has determined and then redetermined that the Constitution offers basic protection to the woman's right to choose").

---

this statute, it cannot be affirmed to be, beyond question, in palpable conflict with the Constitution." *Jacobson*, 197 U.S. at 31. Its inquiry thus ended with deference to the State's chosen policy. But here, a fundamental right is clearly at issue.

31

Still, the right to an abortion does have limits. As the Court recognized in *Casey*, a State may regulate pre-viability abortion to further its legitimate interests, but only if the laws in question do not place an "undue burden" on a woman's right to end her pregnancy. *Casey*, 505 U.S. at 876–79 (plurality opinion). Further, *Casey* itself held that, as applied to a *prohibition* (rather than a mere regulation) of pre-viability abortion, the State's interests *must* give way to a woman's right to terminate her pregnancy. "Before viability, the State's interests are not strong enough to support a prohibition of abortion ...." *Casey*, 505 U.S. at 846 (opinion of the Court); *see also Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) (reiterating that "[b]efore viability, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy" (internal citations and quotation marks omitted)).

It is abundantly clear that the medical restrictions in the state health order are unconstitutional to the

32

extent that they *prevent* a woman from obtaining an abortion before viability--that is, where they effect a *prohibition* on abortion.  Although *Casey* did not consider the interests presented by the defendants here (preserving healthcare resources and reducing close social contact), it plainly holds that the choice to terminate a pregnancy before viability must belong to the woman, not the State.[11]  *Casey*, 505 U.S. at 846 (opinion of the Court); *see also Gonzales*, 550 U.S. at 146.  To fully prevent this choice (by, for example, mandating that a woman's abortion be delayed until it is illegal) violates *Casey*'s central holding, and thus violates *Jacobson*, too.  *See Jacobson*, 197 U.S. at 31; *see also id.* at 25 ("A local enactment or regulation, even if based on the acknowledged police powers of a state, must

---

11. Indeed, the underlying logic of *Casey* centers on dignity and autonomy.  *See Casey*, 505 U.S. at 852 (noting that, in the abortion context, "the liberty of the woman is at stake in a sense unique to the human condition and so unique to the law").  These essential values require the court's protection, even (or, maybe, especially) in an emergency.

33

always yield in case of conflict ... with any right which [the Constitution] gives or secures."). On the record before the court, even where the State's interests are reviewed with great deference, that violation is "plain, palpable," and constitutionally forbidden.[12] *Id.* at 31.

---

12. *Jacobson* also discusses an exception for "[e]xtreme cases," when the police power is exerted "in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression." *Jacobson*, 197 U.S. at 38. *Jacobson* continues: "It is easy, for instance, to suppose the case of an adult who is embraced by the mere words of the act, but yet to subject whom to vaccination in a particular condition of his health or body would be cruel and inhuman in the last degree. We are not to be understood as holding that the statute was intended to be applied to such a case, or, if it was so intended, that the judiciary would not be competent to interfere and protect the health and life of the individual concerned." *Id.* at 38-39. *Jacobson* thus recognizes the need for exemptions to allow individuals to avoid serious, lasting impacts--but, unlike in the case of abortion, it did not face such an impact directly. *See generally In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 819 (S.D. Ohio 1995) (noting that *Jacobson* "involved minimally invasive procedures with no lasting side effects"). At minimum, this exception makes clear that *Jacobson* does not give blanket authority to the State, even in an emergency.

34

But even where they operate as a "regulation" of abortion, and not a "prohibition," the medical restrictions, if interpreted to mandate the postponement of any abortion not necessary to protect the life and health of the mother, are very likely unconstitutional. The court finds it substantially likely that they pose an "undue burden," *Casey*, 505 U.S. at 786, that is so extreme that the restrictions effect "a plain, palpable invasion of rights secured by the fundamental law," *Jacobson*, 197 U.S. at 31.

Under the "undue burden" analysis, a regulation of pre-viability abortion cannot survive if the "burdens a law imposes on abortion access" outweigh its benefits. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016). Put another way, "the court must determine whether, examining the regulation in its real-world context, the obstacle is more significant than is warranted by the State's justifications for the regulation." *Planned Parenthood Se., Inc. v. Strange*, 9 F. Supp. 3d 1272, 1287 (M.D. Ala. 2014) (Thompson, J.).

35

Considered in their real-world context, the medical restrictions will pose a substantial obstacle to many women in Alabama.  In general, even a brief delay causes serious challenges: a 24-hour waiting period, though upheld in *Casey*, posed a close question for the Supreme Court.  As this court later noted, the one-day wait "seems to have fallen just on the other side of the line from being a substantial obstacle." *Planned Parenthood Se., Inc. v. Strange*, 9 F. Supp. 3d 1272, 1286 (M.D. Ala. 2014) (Thompson, J).

Here, counted from the initial imposition of the medical restrictions, a delay could exceed *one month*-- even if the restrictions are not extended--and the lengthy postponement period sweeps in many women.[13]  The

---

13. The defendants have admitted that the course of the pandemic could last three or four months, beginning in early March. *See* April 6, 2020, Hr'g Tr. (doc. no. 133) at 37:21-22.  The medical restrictions could certainly be extended beyond April 30. *See, e.g., id.* at 104:11-14 (Dr. Robinson explaining that she understands the medical restrictions could be extended past April 30).

36

possible implications of a postponement, applied across the board, are varied and deeply troubling, as the court discussed above.  The medical restrictions would amplify existing challenges, pose severe health risks, and render abortions functionally unavailable for at least some women.  Most importantly, however, if the restrictions are read to delay any abortion not necessary to protect the life and health of the mother, then abortion providers would be categorically unable to even *consider* these factors in determining whether an abortion can or should be postponed.

These extensive burdens must be balanced against the interests put forth by the defendants: the preservation of healthcare resources (including personal protective equipment) and the prevention of close social contact.[14]

---

14. In *Casey* and its progeny, regulations of abortions are typically justified by two legitimate interests: "preserving and promoting fetal life," *Gonzales v. Carhart*, 550 U.S. 124, 145 (2007), and protecting the health of the woman, *see id.* at 146. Here, the court assumes that the defendants' interests in preserving healthcare resources and preventing social

37

*See, e.g.*, April 6, 2020, Hr'g Tr. (doc. no. 133) at 10:19:11:1 (describing the interests motivating the restrictions); *id.* at 8:3-9:3 (describing the State's interest in conserving personal protective equipment); *id.* at 9:16-10:2 (social distancing); Decl. of State Health Officer (doc. no. 88-15) at ¶ 24 (discussing reasons for mandating delay of abortions).  The court recognizes the urgency and breadth of the State's COVID-19 response.  But compared to the serious burdens imposed by the medical restrictions, the benefits to the State and the public fall far short.

First, most abortions and related appointments require a limited amount of personal protective equipment (PPE), and a delayed abortion does not erase even the patient's short-term need for medical care.  For instance, the defendants have stated that normal prenatal visits and mandatory pre-abortion examinations can

---

contact may legitimately support a regulation of abortion during an emergency.

proceed as scheduled under the medical restrictions. *See, e.g.*, April 3, 2020, Hr'g Tr. (doc. no. 123) at 42:4-16; *see also Robinson v. Marshall*, 2020 WL 1659700, at *3 (M.D. Ala. 2020) (Thompson, J.) (court memorializing this); Defs.' Clarifications (doc. no. 120) at 2-3 (not disputing it).

Beyond those appointments, abortions themselves require only a limited amount of PPE.[15]   *See* Corr. Robinson Decl. (doc. no. 99-1) at 13 ¶ 30 (discussing the PPE required for a medication abortion); April 6, 2020, Hr'g Tr. (doc. no. 133) at 54:14-55:2 (same); Corr. Robinson Decl. (doc. no. 99-1) at 13 ¶ 30 (discussing the

---

15. Indeed, the State Health Officer conceded that administering a medication abortion "may not itself" require the use of PPE. Decl. of State Health Officer (doc. no. 88-15) at ¶ 24. He justified delaying medication abortions based on the risk of possible complications requiring a surgical abortion or emergency medical care. Decl. of State Health Officer (doc. no. 88-15) at ¶ 24. However, the rate of such complications is extremely low, a fact that Dr. Harris admitted he did not know when he made the decision that medication abortions should be postponed. *See, e.g.*, April 6, 2020, Hr'g Tr. (doc. no. 133) at 79:2-15 (discussing the rate of complications); *id.* at 55:23-56:1.

39

PPE required for procedural/surgical abortions); April
6, 2020, Hr'g Tr. (doc. no. 133) at 132:10-18 (same).
Further, the risk of a serious complication of abortion
is extremely low. *See id.* at 78:11-16. For some delays,
therefore, some amount of PPE will be conserved; for
other delays, a very small amount of PPE (if any) will
be conserved; and for other delays, any PPE conserved
will simply be re-routed to routine prenatal visits or,
often, appointments required to address the complications
of pregnancy.[16]  *See, e.g., id.* at 51:6-8 (Dr. Harris's
expectation that a pregnant woman should continue to
receive prenatal care under the medical restrictions).
Indeed, as to hospital resources more generally, the
medical restrictions are very unlikely to make a
significant difference: the rate of abortions that
require hospitalization is extremely low. *See, e.g.,*
April 6, 2020, Hr'g Tr. (doc. no. 133) at 79:2-23

---

16. With respect to any PPE that *is* conserved, the
defendants have not put forward evidence regarding how
it might be used or re-directed to hospitals that are
experiencing shortages.

40

(discussing the rate of complications and noting that most complications can be managed in an outpatient setting). Put simply, even when measured on a very short time horizon, the benefits of the medical restrictions as applied to abortions, are limited, particularly compared to the burdens that they impose.

Further, if an abortion is delayed and then does *not* proceed, the medical restrictions may backfire over time: PPE usage will often be higher and provider-patient contact will likely increase. A typical uncomplicated pregnancy will require *multiple* prenatal appointments and delivery, each of which require PPE, even if there are no unforeseen complications. *See* Corr. Robinson Decl. (doc. no. 99-1) at 13 ¶ 32; April 6, 2020, Hr'g Tr. (doc. no. 133) at 125:19-126:5 (Dr. Robinson); *see also id.* at 51:6-8 (Dr. Harris's expectation that a pregnant woman should receive prenatal care). A complicated pregnancy would require far more. *See* Corr. Robinson Decl. (doc. no. 99-1) at 13 ¶ 32. At least some of these needs will emerge before the restrictions expire, especially if they

are further extended.

Thus, assuming that the defendants' interests posited here may be considered and granting them substantial deference, the court finds that the burden imposed by the medical restrictions is undue. Indeed, it is substantially and plainly undue--enough that to impose it impinges the right to an abortion in a "plain, palpable" fashion. *Jacobson*, 197 U.S. at 31.[17]

Finally, the defendants also rely upon *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996), *abrogated on unrelated grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), arguing that it supersedes the *Casey* framework and imposes far more deferential review. In *Avino*, reviewing an evening curfew imposed in the wake of Hurricane Andrew, the Eleventh Circuit held that, "when a curfew is imposed as an emergency measure in

---

17. As discussed above, the court assumes that *Jacobson* applies and dictates substantial deference to the state. If only *Casey* applies, the analysis here remains valid and comes to the same conclusion--albeit even more firmly, because the defendants' stated interests would be considered with greater scrutiny.

42

response to a natural disaster, the scope of review in cases challenging its constitutionality is limited to a determination whether the [executive's] actions were taken in good faith and whether there is some factual basis for the decision that the restrictions ... imposed were necessary to maintain order." *Avino*, 91 F.3d at 109 (internal citations, alteration, and quotation marks omitted). But unlike the instant case, *Avino* addressed only temporary, partial restrictions on certain fundamental rights, *see id.*, and explicitly addressed times "when a *curfew* is imposed ... in response to a *natural disaster*." *Id.* (emphasis added). This court declines to extend it beyond those contexts.[18]

---

18. Further, in arguing that *Avino* should be extended to state actions that impact fundamental rights in other contexts, including where such rights may be permanently denied, the defendant's argument proves too much. In an emergency, the defendants suggest, a reviewing court may investigate only "whether the executive's actions were taken in good faith and whether there is some factual basis for the decision that the restrictions imposed were necessary to maintain order." *Avino*, 91 F.3d at 109 (internal citations, alteration, and quotation marks omitted). But under this logic, with only "good faith" and "some factual basis," government actors in any

43

Notably, the court's conclusions come despite the substantial deference to the State that *Jacobson* and *Avino* recommend. In light of the ongoing emergency, the court gives great weight to the State's interests: preventing social contact, preserving personal protective equipment, and preserving other healthcare resources. But the court must nonetheless intervene. A fundamental right is at stake; that right, for some women, is subject to a possible *permanent denial*, not a mere delay or temporary denial; and, based on the Supreme Court's clear holdings on the right to an abortion, the State's asserted interests, even when viewed with a tremendous degree of deference, cannot support the accompanying deprivation of a Fourteenth Amendment right.

---

emergency could permanently curtail nearly *any constitutional right*. *Id.* That assertion, which flows directly from the State's argument, is extreme, and plainly false; *Avino* should not be read to stand for such a broad proposition. *Compare id.* (asserting that fundamental rights may be "temporarily limited or suspended" in emergencies, citing *Korematsu v. United States*, 323 U.S. 214 (1944)) *with Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018) (noting that "*Korematsu* was gravely wrong the day it was decided").

44

The plaintiffs have, therefore, demonstrated a likelihood of success on the merits.

### 3. Appropriate Remedy

Still, the medical restrictions' constitutional problems do not justify the plaintiffs' requested remedy: an injunction of the medical restrictions, as applied to abortion providers, in their entirety. The court declines to use a sledgehammer where a scalpel will do. *Cf. Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 323 (2006) (holding that "invalidating the statute entirely is not always necessary or justified" when "lower courts may be able to render narrower declaratory and injunctive relief"). Accordingly, rather than enjoin the medical restrictions in full, the court will enjoin them only to prevent those applications of the medical restrictions that are inconsistent with the mandates of the Constitution, as described above.

The defendants have put forward multiple interpretations of the medical restrictions. Based upon

45

the defendants' most recent clarifications, the medical restrictions grant substantial leeway to providers acting in their reasonable medical judgment (in contrast to the previous interpretation, described above, which was far more restrictive). For instance, the defendants have clarified that the medical restrictions allow providers to consider a range of factors in determining whether a procedure can lawfully proceed as scheduled. When asked *which* factors, Dr. Harris pointed only to providers' clinical judgment. "[T]he clinician should use their clinical judgment and consider *whatever factors they would deem would be appropriate* to make that determination [of whether a procedure falls within one of the order's exceptions]." April 6, 2020, Hr'g Tr. (doc. no. 133) at 16:3-5 (testimony of Dr. Scott Harris) (emphasis added). Ultimately, "[t]he providers are the ones who determine whether their procedure fits in [the order's] exceptions, not the health department." *Id.* at 49:19-21.

By the State Health Officer's telling, then, an

46

abortion provider is permitted to consider all of those factors that he or she reasonably deems relevant in deciding whether an abortion can be delayed.  As Dr. Robinson credibly testified (and as the court now finds), an abortion provider might reasonably consider many factors, including: whether the woman's abortion would become riskier because of a substantial delay, *see* April 6, 2020, Hr'g Tr. (doc. no. 133) at 105:22-23; the patient's "socioeconomic factors, her medical history, [or] the circumstances surrounding her decision to proceed with an abortion," *id.* at 158:21-23; and the "logistics of getting back to the clinic, taking the time off of work, [and] coordinating care for their children," *id.* at 114:1-2.  Where these considerations (or others) are relevant to a provider's determination under the medical restrictions, that provider may lawfully consider them, and  Dr. Harris explicitly disclaimed any interest in second-guessing those decisions.  *See* April 6, 2020, Hr'g Tr. (doc. no. 133) at 44:3-10.

The court assumes that, if they were only read in

47

this way, the medical restrictions *would not* constitute an unlawful prohibition of any woman's abortion. Rather, they would allow a provider to consider whether a patient's abortion must proceed as scheduled because that patient will not, or likely will not, be able to terminate her pregnancy if it is postponed.

Still, the plaintiffs have expressed a lingering reticence to trust the representations of the defendants, particularly with respect to non-binding interpretations that emerged after multiple days of litigation. The court finds these concerns warranted: "Mid-litigation assurances are all too easy to make and all too hard to enforce, which probably explains why the Supreme Court has refused to accept them." *W. Alabama Women's Ctr. v. Williamson*, 900 F.3d 1310, 1328 (11th Cir. 2018) (affirming an injunction despite a non-binding clarification from the State), *cert. denied sub nom. Harris v. W. Alabama Women's Ctr.*, 139 S. Ct. 2606 (2019); *see also Stenberg v. Carhart*, 530 U.S. 914, 940 (2000) (cautioning against accepting an Attorney General's

48

non-binding interpretation of a state law).  Despite the defendants' most recent clarifications, therefore, an injunction must issue.

A  clear,  enforceable  standard  is  especially essential  given  the  long  history  of  anti-abortion sentiment in Alabama and nationwide.  *See, e.g.*, *Planned Parenthood Se., Inc. v. Strange*, 33 F. Supp. 3d 1330, 1334 (M.D. Ala. 2014) (Thompson, J.), *as corrected* (Oct. 24, 2014), *supplemented*, 33 F. Supp. 3d 1381 (M.D. Ala. 2014), *and amended*, No. 2:13-cv-405-MHT, 2014 WL 5426891 (M.D. Ala. Oct. 24, 2014).  Said history is no secret to any abortion provider in Alabama--it is evident "when she opens the newspaper, drives by a group of protesters at a clinic, or learns that another piece of legislation concerning abortion has been enacted."  *Id.*[19]  As the court noted, this observation "does not imply that such

---

19. Just last year, this court preliminarily enjoined a law that imposed a "near-total ban on abortion." *Robinson v. Marshall*, 415 F. Supp. 3d 1053, 1055 (M.D. Ala. 2019) (Thompson, J.).

49

activities are illegal, improper, or morally wrong;
indeed, the right to express deeply held beliefs is of
the utmost importance." *Id.* But these events have
inarguably yielded a "climate of violence, harassment,
and hostility," *id.*, that pervades the day-to-day work
of abortion providers in Alabama.[20]

---

20. These challenges clearly persist. As one
example, Dr. Robinson regularly receives threatening and
harassing messages online and in person because she is
an abortion provider, including a recent social media
message expressing "hope" that she contracts COVID-19.
*See* Suppl. Robinson Decl. (doc. no. 110-1) at 3 ¶ 8;
Attachment 2 (doc. no. 110-2). Anti-abortion advocates,
including another physician, have also filed complaints
against Robinson with the Board of Medical Examiners.
*See* Suppl. Robinson Decl. (doc. no. 110-1) at 3 ¶ 8-9;
April 6, 2020, Hr'g Tr. (doc. no. 133) at 168:20-169:13.
Although these complaints have never been substantiated,
they have triggered investigations, which Dr. Robinson
must now report each time she renews her medical license.
*See* Suppl. Robinson Decl. (doc. no. 110-1) at 3 ¶ 8;
April 6, 2020, Hr'g Tr. (doc. no. 133) at 169:14-19.
Protesters have also filed complaints against AWC with
the Alabama Department of Public Health, which reliably
lead to investigations of the clinic, disrupting the
clinic's practice though never leading to a finding of
any wrongdoing. *See id.* at 122:13-25. Dr. Robinson
testified that these tactics of protesters "keep[] me and
my staff constantly feeling on edge, I mean, wondering
from day to day what the next attack is going to be and
how effective they will be." *Id.* The court finds Dr.
Robinson's testimony credible.

50

In this environment, a provider might reasonably fear that prosecutions under the medical restrictions will proceed despite the defendants' on-the-record interpretations.[21] But to proceed with lawful abortions, providers must be *confident* that their exercise of reasonable medical judgment will not be met with unconstitutional or bad-faith prosecution. That is, physicians acting lawfully cannot be left to "the tender mercies of a prosecutor's discretion and the vagaries of a jury's decision," *W. Alabama Women's Ctr.*, 900 F.3d at 1329, or wrongly deterred from performing lawful procedures in the first place. *See generally Colautti v. Franklin*, 439 U.S. 379, 396 (1979) ("The prospect of

---

21. These fears are justified by, among other things, recent events. Dr. Robinson testified that, since the medical restrictions went into effect, protestors have called the police asking them to "come and check on us," "thinking that we were supposed to be shut down" and urging investigations from the police and the Department of Public Health. April 6, 2020 Hr'g Tr. (doc. no. 133) at 121:3-21. The police have responded in person at least once since the pandemic began. *See id.* at 121:22-122:9. In general, these efforts (and others like them) keep Dr. Robinson and her staff "constantly feeling on edge." *Id.* at 122:23.

51

such disagreement, in conjunction with a statute imposing strict civil and criminal liability for an erroneous determination ..., could have a profound chilling effect on the willingness of physicians to perform abortions near the point of viability in the manner indicated by their best medical judgment.").

Given these realities, guaranteeing practical, reliable flexibility to abortion providers requires an injunction. But the court's injunction will be limited in scope. It will essentially reduce to an order the most recent representations made by the defendants (and, in particular, by Dr. Scott Harris), rendering them enforceable and locking them into place. To the extent that the state health order is applied in a fashion inconsistent with this mandate, and *only* to that extent, it will be enjoined.


### B. Irreparable Harm

The plaintiffs have demonstrated that the medical restrictions, if left in place, would result in imminent,

irreparable harm to some, though not all, of their
patients.    The medical restrictions are clearly
susceptible to an interpretation that would permanently
prevent or impose plainly undue burdens upon abortions
for some women, denying those women their fundamental
right to privacy.  As the Eleventh Circuit has held, any
denial of that right constitutes "irreparable injury."
*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v.
City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th
Cir. 1990).  The effects of such a denial are particularly
severe in the abortion context: the Seventh Circuit
recently noted that a "delay in obtaining an abortion can
result in the progression of a pregnancy to a stage at
which an abortion would be less safe, and eventually
illegal."  *Planned Parenthood of Wisconsin, Inc. v. Van
Hollen*, 738 F.3d 786, 796 (7th Cir. 2013).  For those
women approaching 20 weeks of pregnancy, such harms are
especially acute.  As described above, in the instant
case, these harms include an increase in medical risk,
*see* April 6, 2020, Hr'g Tr. (doc. no. 133) at 105:19-23,

53

106:17-107:11, 109:20-25, and serious logistical challenges, *id.* at 112:25-114:4, including substantial travel, *see, e.g.*, *id.* at 92:16-19.

Moreover, the plaintiffs have demonstrated that, despite the defendants' clarifications stated on the record, they remain at serious risk of prosecution, including because, without an injunction, the defendants would retain the option to revise their interpretation of the medical restrictions.  Such enforcement also poses a threat of imminent harm.


## C. The Balance of Hardships

The plaintiffs have shown that, with no injunction in place, some women would very likely be forced to carry their pregnancies to term; others would face serious obstacles that render obtaining an abortion very difficult.  Further, they have demonstrated a meaningful risk of unwarranted prosecutions that deter abortion providers and, in turn, create a substantial obstacle for women seeking abortions.  These injuries are substantial.

54

In contrast, the state health order, as applied to abortion providers, contributes relatively little to the State's efforts to preserve healthcare resources and prevent close personal contact. (The court describes and weighs these benefits in detail above.) As importantly, the court's injunction is narrow, minimizing harm to the defendants by embracing recent clarifications made on the record by the State Health Officer. In sum, the court finds that the balance of hardships tips towards the plaintiffs.

### D. The Public Interest

The court also finds that a narrow preliminary injunction serves the public interest. The defendants have described serious and urgent conditions--conditions that merit an equally serious and urgent response. But, based on the current record, the defendants' efforts to combat COVID-19 do not outweigh the lasting harm imposed by the denial of an individual's right to terminate her pregnancy, by an undue burden or increase in risk on

55

patients imposed by a delayed procedure, or by the cloud of unwarranted prosecution against providers.

Still, the court recognizes the demands of the ongoing crisis. By issuing a narrowly tailored injunction, the court simultaneously insists, on the one hand, that abortion providers shoulder some of the burden of the State's widespread response--and protects, on the other, the right to privacy guaranteed by the United States Constitution.

***

In accordance with this opinion, the court will issue an appropriate injunction separately. The bond requirement of Fed. R. Civ. P. 65(c) will be waived.

DONE, this the 12th day of April, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE