IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **YASHICA ROBINSON,** *et al.* ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | CASE NO. 2:19-cv-00365-MHT-JTA |
| ) | |
| **STEVEN MARSHALL, in his** ) | |
| **official capacity as Attorney General of** ) | |
| **the State of Alabama,** *et al.***,** ) | |
| ) | |
|     **Defendants.** ) | |

**DEFENDANT ATTORNEY GENERAL STEVE MARSHALL'S
RESPONSE TO THE COURT'S JULY 6, 2020 ORDER**

Defendant Steve Marshall, sued in his official capacity as Alabama Attorney General, submits the following response to the Court's July 6, 2020 Order requesting briefing on three topics.

**A.    The Act's Pre- and Post-Viability Applications Are Severable**

"Severability is . . . a matter of state law." *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (applying Utah law on severability to a statute regulating abortion). Under Alabama law on severability, "[c]ourts will strive to uphold acts of the legislature." *City of Birmingham v. Smith*, 507 So. 2d 1312, 1315 (Ala. 1987). The Alabama Legislature intended the Act to be its latest statement on abortion regulation. *See* Ala. Act No. 2019-189 § 8 ("The construction of existing statutes and regulations that regulate or recognize abortion in Alabama that are in conflict with or antagonistic to this act shall be repealed as null and void and shall recognize the prohibition of abortion as provided in this act."). If pre-viability applications of the Act are permanently enjoined, the Legislature would have preferred the post-viability applications of the Act remain rather than have no statute at all. Therefore, the post-viability applications of the statute are severable.

1

Under Alabama law, "[i]f a portion of a legislative enactment is determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force." *Smith*, 507 So. 2d at 1315. "[T]he judiciary's severability power extends only to those cases in which the invalid portions are not so intertwined with the remaining portions that such remaining portions are rendered meaningless by the extirpation." *State ex rel. Jeffers v. Martin*, 735 So. 2d 1156, 1159 (Ala. 1999) (internal quotation and citation omitted). This is so because a court must "assume[] that the legislature would not have passed the enactment thus rendered meaningless." *Id.* But "if the remaining portions of an Act are complete within themselves, sensible and capable of execution, the Act will stand." *Mitchell v. Mobile County*, 313 So. 2d 172, 174 (Ala. 1975). In conducting this analysis, "[c]ourts will strive to uphold acts of the legislature." *Smith*, 507 So. 2d at 1315.

The Act does not contain a severability clause. While a severability clause is a clear statement of legislative intent to preserve the constitutional portions of a statute, "the absence of such a clause does not necessarily indicate the lack of such an intent or require a holding of inseverability." *Id.* The Alabama Code contains a general severability provision. *See* Ala. Code § 1-1-16 ("If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable."). This general severability provision is "an expression of legislative intent regarding the general power and duty of the judiciary to sever and save statutory provisions not tainted by the unconstitutionality of other provisions in the same statute." *Martin*, 735 So. 2d at 1159.

While lacking a severability clause, the Act contains a provision expressly dealing with its relationship to existing abortion regulations and its enforceability in the event it is enjoined:

> Section 8. The construction of existing statutes and regulations that regulate or recognize abortion in Alabama *that are in conflict with or antagonistic to this act shall be repealed as null and void and shall recognize the prohibition of abortion as provided in this act*. If this act is challenged and enjoined *pending a final judicial decision*, the existing statutes and regulations that regulate or recognize abortion shall remain in effect during that time.

Ala. Act No. 2019-189 § 8 (emphasis added). The Alabama Legislature made two things clear with this provision: (1) the Act's abortion regulations are to replace any prior regulations to the extent they conflict; and (2) if the Act is *preliminarily enjoined*, existing abortion regulations are to remain in effect. The severability question before the Court is how Section 8 would apply if the Court *permanently* enjoined pre-viability applications of the Act.

Assuming the Court permanently enjoins pre-viability applications of the Act, "we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). Under Alabama law, the answer is clearly "yes" so long as "the remaining portions of [the] Act are complete within themselves, sensible and capable of execution." *Mitchell*, 313 So. 2d at 174. That is the case here.

First, the distinction between pre- and post-viability applications of the Act delineate factually and legally distinct circumstances under which abortion can be regulated. Post-viability abortions require different procedures than pre-viability abortions. *See, e.g.*, *Gonzales v. Carhart*, 550 U.S. 124, 134-40 (2007) (surveying the different methods of abortion used at different stages of fetal development). Indeed, Plaintiffs concede that they do not perform post-viability abortions at their clinics and do not have standing to challenge post-viability applications of the Act. *See* Doc. 182 at 2 n.1, 8. The Supreme Court has also chosen viability as the developmental stage that

demarcates the constitutional boundary of when a state may prohibit abortion, subject to limited exceptions. *See Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 846 (1992) (reaffirming "a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger the woman's life or health" as one of *Roe*'s "essential holding[s]."). Therefore, the Act's pre-viability applications may be severed from its post-viability applications and still contain abortion regulations "complete within themselves." *Mitchell*, 313 So. 2d at 174; *see also Leavitt*, 518 U.S. at 139-45 (summarily reversing lower court for failing to sever portions of abortion statutes applicable prior to 20 weeks gestational age from those applicable after 20 weeks gestational age).

Second, the post-viability applications of the Act, when they replace existing abortion regulations as required by Section 8, are "sensible and capable of execution." *Mitchell*, 313 So. 2d at 174. Plaintiffs repeatedly reference the potential interplay between the Act's post-viability applications and Alabama's 20-week ban on abortion contained in Alabama Code § 26-23B-5. *See* Doc. 182 at 6 n.8. But Alabama has a separate post-viability abortion ban contained in Alabama Code §§ 26-22-1 to -5. When the Act's post-viability applications displace those provisions of § 26-22-3 that are in conflict, the result is a coherent whole, both sensible and capable of execution.

The Act prohibits post-viability abortions unless "an attending physician licensed in Alabama determines that an abortion is necessary in order to prevent a serious health risk to the unborn child's mother." Ala. Act 2019-189 § 4. The Act defines "serious health risk" to include "death" or "serious risk of substantial physical impairment of a major bodily function" as well as an emotional condition or mental illness that a psychiatrist determines will cause the woman to "engage in conduct that could result in her death or the death of her unborn child." *Id.* The Act would also require a second physician to concur in writing within 180 days of a post-viability

abortion that it was necessary to prevent a serious health risk unless the abortion was performed as the result of a medical emergency. *Id.* In sum, the Act's post-viability application would prohibit abortions unless necessary to avoid a serious health risk (including mental conditions in limited circumstances) and require physician concurrence within 180 days unless the abortion was the result of a medical emergency.

By comparison, Alabama's existing post-viability abortion statute similarly contains a ban subject to exceptions "necessary to prevent either the death of the pregnant woman or the substantial and irreversible impairment of a major bodily function of the woman." Ala. Code § 26-22-3(b)(1). But the existing ban does not authorize an exception for an abortion "on the basis of a claim or a diagnosis that the woman will engage in conduct which would result in her death or in a substantial and irreversible impairment of a major bodily function." *Id.* To the extent the Act allows abortion to prevent a woman from harming herself or her unborn child based on a mental condition, the prior statute is "in conflict with or antagonistic to this act" and thus "repealed as null and void." Ala. Act 2019-189 § 8.

The existing statute also requires a second physician to concur in the judgment that a post-viability abortion is necessary to prevent a serious health risk, but requires the second physician to be present during the procedure unless the abortion is in the case of a medical emergency. Ala. Code §§ 26-22-3(c)(1)–(5). The Act requires a similar concurrence, but rather than compelling the second physician's presence during the procedure, allows 180 days for physician concurrence by writing. This too is "in conflict with or antagonistic to" the current statute and would be "repealed as null and void." Ala. Act 2019-189 § 8.

In sum, the repeal-and-replace language of Section 8 of the Act results in a modified post-viability abortion ban that is "complete within [itself], sensible and capable of execution."

*Mitchell*, 313 So. 2d at 174. If the Act's pre-viability applications were severed, the post-viability applications would repeal and replace the inconsistent portions of § 26-22-3. The result would be a ban on post-viability abortions that relaxes the physician-concurrence requirements and recognizes some mental conditions as sufficient justification for a post-viability abortion. Given Alabama's command to uphold statutes where possible, and the Legislature's repeal-and-replace language in Section 8, it is clear the Legislature would "have preferred what is left of its statute to no statute at all." *Ayotte*, 546 U.S. at 330. The Act's post-viability applications should be severed and given effect.

**B.     The Act's Post-Viability Applications Do Not Pose Constitutional Questions Because Plaintiffs Lack Standing to Challenge These Applications**

Plaintiffs concede that they lack standing to challenge the Act's post-viability applications because they do not perform post-viability abortions at their clinics. Doc. 182 at 2 n.1, 8. Because Plaintiffs lack standing, the Court lacks subject-matter jurisdiction over any constitutional question presented by the Act's post-viability applications. Therefore, the Court's second question posed in its July 6, 2020 Order must be answered in the negative.

Because "the constitutional standing doctrine stems directly from Article III's 'case or controversy' requirement," standing "implicates . . . subject matter jurisdiction." *Nat'l Parks Conservation Ass'n v. Norton,* 324 F.3d 1229, 1242 (2003). The Eleventh Circuit has recently reaffirmed that courts must first determine whether a plaintiff has standing to sue, and, if the plaintiff does not, the court must dismiss the case without addressing the merits. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) ("Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting."); *see also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("[S]tanding is a threshold jurisdictional

6

question which must be addressed prior to and independent of the merits of a party's claims.") (internal quotation and citation omitted).

The Eleventh Circuit subsequently applied that principle to reverse a district court's dismissal of a claim with prejudice on the merits and remand the case with instructions to dismiss the case without prejudice for lack of standing. *See Gardner v. Mutz*, 962 F.3d 1329, 1338-40 (11th Cir. 2020). The district court found that the defendants' jurisdictional challenges implicated an element of the cause of action and dismissed these claims on the merits. *Id.* at 1335-36. The Court stated that "[i]n bypassing standing to address the merits, the district court erred." *Id.* at 1339. Rather, the lower court should have concluded the plaintiffs lacked standing and dismissed the case without prejudice. *Id.* at 1343 (stating, after concluding the plaintiffs lacked standing, "we may not and do not proceed to the merits").

Here, the parties agree that Plaintiffs lack standing to challenge post-viability applications of the Act, and accordingly the Court lacks jurisdiction to consider the merits of any constitutional questions these applications present. *Id.* at 1344. If the Court finds the pre-viability applications of the Act are severable, it must leave the post-viability applications in effect. As a result, the Court's question as to whether the Act's post-viability applications present constitutional questions must be answered in the negative for lack of subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). In sum, plaintiffs with no standing to challenge a law cannot properly put constitutional questions about the law before a federal court.

**C.**     ***June Medical* Does Not Settle the Issue of Whether Discovery Should Be Permitted in this Case**

The Supreme Court's decision in *June Medical Services L.L.C. v. Russo*, held that the "abortion providers" in that case could "invoke the rights of their actual or potential patients in challenges to abortion-related regulations." 140 S. Ct. 2103, 2118 (2020) (plurality); *see also id.* at 2139 n.4 (Roberts, C.J., concurring in the judgment) (agreeing "that the abortion providers in this case have standing to assert the constitutional rights of their patients"). Thus, current third-party standing precedent supports Plaintiffs' ability to press their claims, at least as to aspects of the Act that could apply to Plaintiffs.[1]

As to the potential value of discovery in this case, *June Medical* suggests that there is potential value in the evidence Defendant seeks to introduce regarding whether *Casey* and *Roe v. Wade*, 410 U.S. 113 (1973), should be overruled. In *June Medical*, "[b]oth Louisiana and the providers agree[d] that the undue burden standard announced in *Casey* provide[d] the appropriate framework to analyze Louisiana's law," and "[n]either party" asked the Court "to reassess the constitutional validity of that standard." *June Medical*, 140 S. Ct. at 2135 (Roberts, C.J., concurring in the judgment). That is not the case here.

Moreover, Chief Justice Roberts emphasized the importance of stare decisis and the "additional factors" the Supreme Court "considers before overruling a precedent, such as its administrability, its fit with subsequent factual and legal developments, and the reliance interests that the precedent has engendered." *Id.* at 2134 (citing *Janus v. State, County, and Municipal Employees*, 138 S. Ct. 2448, 2478–79 (2018)). Defendant seeks to build a record on these factors and the issue the parties in *June Medical* did not contest: whether *Casey* and *Roe* were wrongly

---

[1] Defendant, however, continues to reserve the right to challenge this precedent and Plaintiffs' standing on appeal.

8

decided and should be overruled. As Defendant has already argued, he wishes to offer three or four expert reports relevant to factors the Court considers when deciding whether to overrule prior precedent. *See* Doc. 63 at 2-3. Such a proffer would be non-burdensome as well as relevant to Defendant's "nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law." Fed. R. Civ. P. 26(g)(1)(B)(i). As Judge Ho recently recognized, "[n]othing prevent[s]" a "district court" from "permit[ing] fact development, consider[ing] the evidence, and even issu[ing] findings of fact on an issue that" is settled by existing precedent. *Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 281-82 (5th Cir. 2019) (Ho, J., concurring). And because even *Casey* conceded that "time has overtaken some of *Roe*'s factual assumptions," 505 U.S. at 860, Defendant requests the opportunity to present evidence on such factors as scientific evidence that human life begins at conception, the erroneous view of history on which the *Roe* Court's constitutional analysis relied, and whether women in fact rely on the right to abortion created by *Roe*.

**D.    Conclusion**

The Act's pre-viability applications are severable from its post-viability applications. The post-viability applications present no constitutional issues over which this Court has jurisdiction, and so they should be allowed to go into effect. Finally, *June Medical* supports Plaintiffs' third-party standing as well as Defendant's argument that he should be allowed to submit evidence on the *stare decisis* factors relevant to overruling *Roe* and *Casey*.

Respectfully submitted,

Steve Marshall,
  *Attorney General*

A. Barrett Bowdre (ASB-2087-K29V)
  *Deputy Solicitor General*

/s Brad A. Chynoweth
James W. Davis (ASB-4063-I58J)
Brad A. Chynoweth (ASB-0030-S63K)
Brenton M. Smith (ASB-1656-X27Q)
  *Assistant Attorneys General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Brad.Chynoweth@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov

***Counsel for Defendants Steve Marshall and State Health Officer Scott Harris***

## CERTIFICATE OF SERVICE

      I hereby certify that on August 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                               *s/* Brad A. Chynoweth
                                               Counsel for Defendant Steve Marshall